1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  MARK R. BECKINGTON, State Bar No. 126009
   Supervising Deputy Attorney General
3  GEORGE WATERS, State Bar No. 88295
   Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 323-8050
6    Fax:  (916) 324-8835
     E-mail:  George.Waters@doj.ca.gov
7  *Attorneys for Defendant Alex Padilla*

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  **CITIZENS FOR FAIR**                    2:17-cv-00973
    **REPRESENTATION; CITY OF FORT**
    **JONES; THE CALIFORNIA**
14  **LIBERTARIAN PARTY; THE**
    **CALIFORNIA AMERICAN**
15  **INDEPENDENT PARTY; THE MARIN**          **DEFENDANT ALEX PADILLA'S**
    **COUNTY GREEN PARTY; MARK**             **NOTICE OF MOTION & MOTION TO**
16  **BAIRD; JOHN D'AGOSTINI; LARRY**         **DISMISS; MEMORANDUM OF POINTS**
    **WAHL; SHASTA NATION INDIAN**           **AND AUTHORITIES [FRCP 12(b)(1),**
17  **TRIBE; ROY HALL JR; WIN**              **12(b)(6)]**
    **CARPENTER; KYLE CARPENTER;**
18  **PATTY SMITH; KATHERINE**               Date:         August 25, 2017
    **RADINOVICH; DAVID GARCIA; LESLIE**     Time:         10:00 a.m.
19  **LIM; KEVIN MCGARY; TERRY**             Courtroom:    3
    **RAPOZA; HOWARD THOMAS;**               Judge:        The Honorable Kimberly J.
20  **MICHAEL THOMAS; STEVEN BAIRD;**                      Mueller
    **MANUEL MARTIN; OTHERS**                Trial Date:   N/A
21  **SIMILARLY SITUATED; AND DOES 1-**      Action Filed: 5/9/17
    **30,**
22
                           Plaintiffs,
23
         v.
24

25  **CALIFORNIA SECRETARY OF STATE**
    **ALEX PADILLA,**
26
                           Defendant.
27

28

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion ........................................................................................... 1

Counsel Certification Re Meet and Confer ..................................................................... 1

Introduction ....................................................................................................................... 2

Background ......................................................................................................................... 2

    I.      Plaintiffs' Allegations ..................................................................................... 2

    II.    California Law Governing Redistricting and the Size of Legislative
          Districts ............................................................................................................ 5

    III.   Prior Litigation in this District Posing the Same Issue ............................ 6

Legal Standard .................................................................................................................... 6

Argument ............................................................................................................................. 7

    I.      The Court Does Not Have Subject Matter Jurisdiction of Plaintiffs' Claims......... 7

          A.    Plaintiffs Lack Article III Standing Because the Injury They Allege
               Is a General Grievance Shared by the Public at Large. ............................. 7

          B.    Plaintiffs' Claims Are Barred by the Political Question Doctrine............. 9

    II.    The Complaint Does Not State a Claim upon Which Relief Can Be
          Granted............................................................................................................. 11

          A.    First Claim—Fourteenth Amendment Privileges and Immunities
               Clause ............................................................................................................. 11

          B.    Second Claim—Fourteenth Amendment Due Process Clause ................. 12

          C.    Third Claim—Fourteenth Amendment Equal Protection Clause ............. 13

          D.    Fourth Claim—Fourteenth Amendment Abridgement Clause ................. 14

          E.    Fifth Claim—First Amendment ................................................................. 15

          F.    Sixth Claim—Federal Voting Rights Act, 52 U.S.C. § 10301 ................. 15

          G.    Seventh Claim—Ninth Amendment ......................................................... 16

Conclusion .......................................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baker v. Carr*
  369 U.S. 186 (1962) ...................................................................................9, 10, 11

*Burdick v. Takushi*
  504 U.S. 428 (1992) ..................................................................................................12

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) ....................................................................................6

*Corrie v. Caterpillar*
  503 F.3d 974 (9th Cir. 2007) .......................................................................................9

*Drake v. Obama*
  664 F.3d 774 (9th Cir. 2011) ....................................................................................8, 9

*Duncan v. McCall*
  139 U.S. 449 (1891) ..................................................................................................13

*Flast v. Cohen*
  392 U.S. 83 (1968) .......................................................................................................2

*Gomillion v. Lightfoot*
  364 U.S. 339 (1960) ..............................................................................................12, 13

*Guinn v. United States*
  238 U.S. 347 (1915) ..................................................................................................12

*Hein v. Freedom From Religion Foundation, Inc.*
  551 U.S. 587 (2007) .....................................................................................................9

*Holder v. Hall*
  512 U.S. 874 (1994) ......................................................................................10, 15, 16

*Jenkins v. C.I.R.*
  483 F.3d 90 (2d Cir. 2007) .........................................................................................16

*Johnson v. Riverside Healthcare Sys., LP*
  534 F.3d 1116 (9th Cir. 2008) .....................................................................................7

*Kokkonen v. Guardian Life Ins. Co. of America*
  511 U.S. 375 (1994) .....................................................................................................6

*Lance v. Coffman*
  549 U.S. 437 (2007) ............................................................................................2, 8, 9

ii

1
2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3
4
*Lane v. Wilson*
    307 U.S. 268 (1939) ......................................................................................12

5
*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008).........................................................................7

6
7
*Ex Parte Levitt*
    302 U.S. 633 (1937) ......................................................................................9

8
9
*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ...................................................................................7, 8

10
*Marbury v. Madison*
    5 U.S. (1 Cranch) 137 (1803) .......................................................................9

11
12
*McDonald v. City of Chicago, Ill.*
    561 U.S. 742 (2010) ....................................................................................11

13
14
*Minnesota State Bd. for Community Colleges v. Knight*
    465 U.S. 271 (1984) ....................................................................................15

15
*Nixon v. Condon*
    286 U.S. 73 (1932) ......................................................................................12

16
17
*Nixon v. Herndon*
    273 U.S. 536 (1927) ....................................................................................12

18
19
*No GWEN Alliance of Lane County, Inc. v. Aldridge*
    855 F.2d 1380 (9th Cir. 1988).......................................................................9

20
*People ex rel. Snowball v. Pendegast*
    96 Cal. 289 (1892) ........................................................................................5

21
22
*Reynolds v. Sims*
    377 U.S. 533 (1964) .........................................................................12, 13, 14

23
24
*San Diego County Gun Rights Committee v. Reno*
    98 F.3d 1121 (9th Cir. 1996)........................................................................16

25
*Schlesinger v. Reservists Comm. To Stop the War*
    418 U.S. 208 (1974) ......................................................................................9

26
27
*Ex parte Siebold*
    100 U.S. 371 (1879) ....................................................................................12

28

Defendant Alex Padilla's Notice of Motion & Motion to Dismiss; Memorandum of Points and Authorities
(2:17-cv-00973)

**TABLE OF AUTHORITIES**
(continued)

Page

*Silver v. Jordan*
 241 F.Supp. 576 (S.D. Cal. 1964) ............................................................................14

*Slaughter-House Cases*
 83 U.S. 36, 39 (1872) ...............................................................................................11

*Smith v. Allwright*
 321 U.S. 649 (1944) ..................................................................................................12

*Sprewell v. Golden State Warriors*
 266 F.3d 979 (9th Cir. 2001) ......................................................................................7

*Summers v. Earth Island Institute*
 555 U.S. 488 (2009) ....................................................................................................7

*Terry v. Adams*
 345 U.S. 461 (1953) ..................................................................................................12

*Thompson v. Davis*
 295 F.3d 890 (9th Cir. 2002) ......................................................................................7

*United States v. Classic*
 313 U.S. 299 (1941) ..................................................................................................12

*United States v. Mosley*
 238 U.S. 383 (1915) ..................................................................................................12

*United States v. Saylor*
 322 U.S. 385 (1944) ..................................................................................................12

*Valley Forge Christian College v. Americans United for Separation of Church and
 State, Inc.*
 454 U.S. 464 (1982) ....................................................................................................7

*Vandermost v. Bowen*
 53 Cal.4th 421 (2012) .................................................................................................6

*Vieth v. Jubelirer*
 541 U.S. 267 (2004) ........................................................................................2, 10, 11

*Warnken v. Schwarzenegger*
 2009 WL 4809880 (E.D. Cal., 2009) ..........................................................................6

*Warren v. Fox Family Worldwide, Inc.*
 328 F.3d 1136 (9th Cir. 2003) ....................................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Warth v. Seldin*
    422 U.S. 490 (1975) .................................................................................8

*Western Mining Council v. Watt*
    643 F.2d 618 (9th Cir. 1981) ...................................................................7

*Ex parte Yarbrough*
    110 U.S. 651 (1884) ...............................................................................12

**STATUTES**

52 United States Code
    § 10301 ..................................................................................................15
    § 10301(a) .............................................................................................15
    §§ 10301 et seq. .......................................................................................5

**CONSTITUTIONAL PROVISIONS**

California Constitution
    Article IV, § 2 .............................................................10, 14, 15, 16
    Article IV, § 2(a) .....................................................................................5
    Article IV, § 6 .........................................................................................6
    Article XXI, § 1 ......................................................................................6

United States Constitution
    Article III, § 2 .........................................................................................2
    Article IV, § 4 .......................................................................................13
    Article XIV, § 1 ......................................................................11, 12, 13

**COURT RULES**

Federal Rules of Civil Procedure
    Rule 12(b)(1) .......................................................................................1, 6
    Rule 12(b)(6) .......................................................................................1, 7

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 25, 2017, at 10:00 a.m. in Courtroom 3, 15th Floor, of the United States Courthouse located at 501 I Street, Sacramento, CA, 95814, Defendant Alex Padilla will move to dismiss plaintiffs' complaint with prejudice for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, all records in this action and matters of which the Court may take judicial notice, and any argument to be heard by the Court.

**COUNSEL CERTIFICATION RE MEET AND CONFER**

The undersigned counsel certifies that he conferred with plaintiffs' counsel Gary Zerman by phone on May 26, 2017, and conferred again by phone with plaintiffs' counsel Gary Zerman and Scott Stafne on May 30, 2017.  During those conferences, the grounds for this motion to dismiss, and related procedural issues, were explained and discussed.  Meet and confer efforts now have been exhausted.

Dated:  May 30, 2017                                              Respectfully Submitted,

                                                                        XAVIER BECERRA
                                                                        Attorney General of California
                                                                        MARK R. BECKINGTON
                                                                        Supervising Deputy Attorney General


                                                                        */s/ George Waters*
                                                                        GEORGE WATERS
                                                                        Deputy Attorney General
                                                                        *Attorneys for Defendant Alex Padilla*

1

1

## INTRODUCTION

2    Plaintiffs' goals are ambitious.  Their convictions are strong.  But conviction alone is not

3    enough to gain them entree to the federal court system.  The Federal courts are courts of limited

4    jurisdiction.  The question plaintiffs ask this Court to adjudicate—whether the present size of the

5    California Legislature (40 Senators and 80 Assemblymembers) is too small to represent

6    California's almost 40 million residents—falls outside the constitutional bounds of the federal

7    courts' subject matter jurisdiction.  These constitutional boundaries "go to the very heart of our

8    tripartite form of government" by assuring that the federal courts "will not intrude into areas

9    committed to the other areas of government."  *Flast v. Cohen,* 392 U.S. 83, 95 (1968).  To this

10   end, federal courts are empowered to decide only justiciable questions—those that arise in the

11   context of genuine "Cases" or "Controversies."  U.S. Const. art. III, § 2.

12   The case or controversy doctrine limits the business of federal courts to "questions

13   presented in an adversary context and in a form historically viewed as capable of resolution

14   through the judicial process."  *Flast,* 392 U.S. at 94-95.  The oldest and most fundamental thread

15   in the law of justiciability is that federal courts will not give advisory opinions.  *Id.* at 96.  Other

16   limitations are equally well-settled:  No justiciable case or controversy is presented where, as here,

17   plaintiffs lack standing to maintain the action.  *Lance v. Coffman*, 549 U.S. 437, 442 (2007).  No

18   justiciable case or controversy is presented where, as here, the plaintiffs seek adjudication of a

19   purely political question.  *Vieth v. Jubelirer,* 541 U.S. 267, 277-278 (2004).

20   Dismissal is plainly warranted here for two reasons.  First, in asking the federal courts to

21   adjudicate the inherently political question of the proper size of the California Legislature,

22   plaintiffs have not presented and cannot present a justiciable case or controversy.  Second, each of

23   plaintiffs' seven claims fails to state a claim upon which relief can be granted.

24

## BACKGROUND

25   ### I.   PLAINTIFFS' ALLEGATIONS

26   Plaintiffs are an array of individuals and entities who complaint that California's 40

27   Senators and 80 Assemblymembers "cannot possibly represent forty (40) MILLION people in

28

any effective, equitable and meaningful manner as contemplated by the United States Constitution and Amendments thereto."  Complaint (Dkt. 1) at p. 1.  Plaintiffs are:

- Citizens for Fair Representation (CFR), a nonprofit formed to promote meaningful opportunities for people who are not wealthy to be elected to the state Legislature. Complaint ¶ 3.1.  CFR includes California voters, a municipality, and government officials, all of whom aim to create reasonably sized districts and engender competitive elections.  Complaint ¶ 3.2.

- The City of Fort Jones, which is a municipal subdivision of Siskiyou County, and which has an interest in protecting the health and safety of its citizens.  Complaint ¶ 3.4.

- Siskiyou County, which in 1852 had its own representative in the Senate and in the Assembly, but now shares a Senator with ten counties and an Assemblymember with seven counties.  Numerous state economic policies have harmed Siskiyou County by preventing logging, mining, and raising cattle.  The county does not have the political power to stop these harmful actions.  Complaint ¶ 3.5.

- The California Libertarian Party and the California American Independent Party, who run candidates for state, federal, and local elections, few of whom are elected.[1]  They allege that the size of districts and the cost of running is "deterring."  Complaint ¶ 3.6.

- Mark Baird, a citizen of the United States and California who resides in Fort Jones, Siskiyou County, who has seen his vote devalued by about 100% during his lifetime. Complaint ¶ 3.10.

- John D'Agostini, who resides in El Dorado County and is the county Sheriff.  He has an interest in El Dorado county (and communities within its boundaries) having adequate representation in the State Legislature.  Complaint ¶ 3.11.

---

[1]  The Marin County Green Party is listed as a plaintiff in the caption, but it is not mentioned in the complaint.

3

- Larry Wahl, a citizen and an elected Supervisor of Butte County who, along with many fellow citizens, was injured by the Legislature's failure to timely address erosion of the spillway at Oroville Dam that resulted in the evacuation of over 180,000 people.  He alleges that one reason the spillway problem was not timely remedied is because there are not enough members of the Legislature to perform adequate oversight.  Complaint ¶ 3.12.

- Terry Rapoza, Howard Thomas, and Michael Thomas, who are United States citizens qualified to vote in California.  They have an interest in adequate representation. Complaint ¶ 3.13.

- Patty Smith and Katherine Radinovich, who are voters and also are women interested in being elected.  They allege that smaller districts would allow more women to be elected to the Legislature.  Complaint ¶ 3.14.

- David Garcia, Leslie Lim, and Kevin McGary, who are "members of ethnic minorities" (Mr. Garcia is a citizen of Hispanic ancestry, Mr. Lim is an American of Asian heritage, Mr. McGary is an African American voter) who assert a right to "fair representation according to their ethnic make-up as a proportion of the population." Complaint ¶ 3.15.

- Roy Hall Jr. is the Chief of the Shasta Nation Tribe of Indians.  He resides in Fort Jones California.  Complaint ¶ 3.17.

- Win Carpenter is a private citizen of Native American ancestry and is a member of the Pit River Indian Tribe.  Complaint ¶ 3.17.

- The Shasta Tribe of Indians are Native Americans in an unrecognized tribe.  They are interested in promoting the tribe's self-governance rights without limitations on the tribe's recognition imposed the State of California.  Complaint ¶ 3.18.

- Kyle Carpenter just turned 18 and "his vote is already losing value."  Complaint ¶ 3.19.

- Steve Baird is a recent unsuccessful candidate for California Senate District 1 who believes that he would likely have been elected in a smaller district.  His district

4

measures about 27,000 square miles, covers parts of 11 counties, and has close to one million people.  Complaint ¶ 3.20.

- Manuel Martin is a recent unsuccessful candidate for Assembly District 9 who believes that the district was too big for him to run an effective campaign.  The district covers two counties and has close to 500,000 people.  Complaint ¶ 3.21.

Defendant is California Secretary of State Alex Padilla.  Complaint ¶ 3.23.

Plaintiffs allege that the membership of the state Legislature was fixed at 40 Senators and 80 Assemblymembers in 1862 (Complaint ¶ 4.2); that presently each Assembly district contains almost 500,000 people and each Senate district contains almost one million people (Complaint ¶ 4.2); that presently the Legislature employs about 2,100 staff members, many of whom perform the duties of representatives (Complaint ¶ 4.22); and that California's refusal to increase the number of districts is arbitrary and unconstitutional (Complaint ¶ 2.4).

The complaint makes seven claims that the present legislative districts violate federal law: (1) Privileges and Immunities Clause of the Fourteenth Amendment (Complaint ¶¶ 5.1-5.5), (2) Due Process Clause of the Fourteenth Amendment (Complaint ¶¶ 5.6-5.9), (3) Equal Protection Clause of the Fourteenth Amendment ¶¶ 5.10-5.13), (4) Apportionment Clause of the Fourteenth Amendment (Complaint ¶¶ 5.14-5.17), (5) First Amendment (Complaint ¶¶ 5.18-5.21), (6) Voting Rights Act, 52 USC §§ 10301 et seq. (Complaint ¶¶ 5.22-5.29), and (7) Ninth Amendment (Complaint ¶¶ 5.30-5.37).  Each claim is premised on the assertion that the present districts are too large.  Complaint ¶¶ 5.5, 5.9, 5.12, 5.17, 5.21, 5.28, 5.37.

As relief, plaintiffs seek an injunction establishing legislative districts "in accordance with such plans as plaintiffs will submit to the Court," and imposing a moratorium on the hiring of legislative assistants who perform legislative functions.  Complaint pp. 27-28.

## II.   CALIFORNIA LAW GOVERNING REDISTRICTING AND THE SIZE OF LEGISLATIVE DISTRICTS

The membership of the Legislature is fixed by the California Constitution at 40 Senators and 80 Assemblymembers.  Cal. Const. art. IV, § 2(a).  The membership has been fixed at these numbers since at least 1879.  *People ex rel. Snowball v. Pendegast*, 96 Cal. 289, 291-92 [31 P.

5

1    103, 104] (1892) (1879 Constitution fixed membership of Senate at 40 and Assembly at 80).

2    Each legislator is elected from a separate district.  Cal. Const. art. IV, § 6.

3         Redistricting of congressional, State Senatorial, Assembly, and Board of Equalization

4    districts is done by the Citizens Redistricting Commission.[2]  Cal. Const. art. XXI, § 1.

5    Redistricting occurs in the year following the year in which the national census is taken, at the

6    beginning of each decade.  *Id.*  The Commission adopted the current statewide maps in 2011.

7    *Vandermost v. Bowen*, 53 Cal.4th 421, 438 (2012).  The Commission adopted an "ideal standard"

8    population of 702,905 for congressional districts, 465,674 for Assembly districts, 931,349 for

9    Senate districts, and 9,313,489 for Board of Equalization districts.  Citizens Redistricting

10   Commission Final Report on 2011 Redistricting, August 15, 2011, at 9, 11.[3]

11   **III.   PRIOR LITIGATION IN THIS DISTRICT POSING THE SAME ISSUE**

12        In 2009 a separate department of this Court decided a virtually identical case.  *Warken v.*

13   *Schwarzenegger*, 2009 WL 4809880 (E.D. Cal., 2009), *report and recommendation adopted* 2010

14   WL 1407796 (E.D. Cal., 2010).  In *Warken*, a Santa Barbara resident alleged that California

15   Assembly districts were so large that state government was inaccessible to most citizens, and

16   running for office was so expensive that it was out of reach for most citizens.  *Id.*, 2009 WL

17   4809880 at *1.  The case was dismissed for lack of subject matter jurisdiction.  *Id.*, 2009 WL

18   4809880 at *8.

19                                **LEGAL STANDARD**

20        Rule 12(b)(1):  A challenge to standing is properly raised in a Rule 12(b)(1) motion to

21   dismiss for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

22   F.3d 1115, 1122 (9th Cir. 2010).  Federal courts are courts of limited jurisdiction.  Thus it is

23   presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

24   contrary rests upon the party asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of*

25   _____

           [2]  The Commission is not a defendant in this action.

26         [3]  Available at

27   http://wedrawthelines.ca.gov/downloads/meeting_handouts_082011/crc_20110815_2final_report.
     pdf (last visited 5/27/2017).

28

*America*, 511 U.S. 375, 377 (1994).  The plaintiff bears the burden of showing that each claim comes within the jurisdiction of a federal court.  *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

Rule 12(b)(6):  Dismissal for failure to state a claim under Rule 12(b)(6) is also reviewed de novo.  *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002).  "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-1122 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  The Court accepts as true all material allegations in the complaint and construes those allegations in the light most favorable to the plaintiff.  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  However, the Court need not accept as true legal conclusions, conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (9th Cir. 2001); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

# ARGUMENT

## I.  THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OF PLAINTIFFS' CLAIMS.

### A.  Plaintiffs Lack Article III Standing Because the Injury They Allege Is a General Grievance Shared by the Public at Large.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).  Standing is not measured by the "intensity of the litigant's interest or the fervor of his advocacy."  *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 486 (1982).  To establish standing, a plaintiff must show:

(1) an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court; and

7

(3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Drake v. Obama*, 664 F.3d 774, 779 (9th Cir. 2011), quoting *Lujan*, 504 U.S. at 560–61 (omissions in original) (internal quotation marks and citations omitted).

Plaintiffs do not meet the first prong of standing analysis because the injury they allege—diluted representation in the Legislature—is a general grievance shared by the public at large.[4] "[A] litigant's interest cannot be based on the 'generalized interest of all citizens in constitutional governance.'" *Drake*, 664 F.3d at 774 (quoting *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 217 (1974)). "[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In case after case, the Supreme Court has held that a general grievance widely shared by the public does not create Article III standing. For example, in *Lance v. Coffman*, 549 U.S. 437 (2007), the plaintiffs challenged a redistricting provision of the Colorado Constitution that limited redistricting to once per census. The Court held that the plaintiffs lacked standing to pursue the claim:

> The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past. It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing. Because plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim.

---

[4] *See* Complaint ¶2.3: "*The People in California* have had their representation limited and capped and now have an Oligarchy at best and only a mere shadow of connection to the represented." (Emphasis added.)

1  *Lance*, 549 U.S. at 442.  *See also Ex Parte Levitt,* 302 U.S. 633, 636 (1937) (challenge to Hugo

2  Black's appointment to the Supreme Court dismissed where plaintiff alleged only "a general

3  interest common to all members of the public"); *Schlesinger v. Reservists Committee to Stop the*

4  *War,* 418 U.S. 208, 220-221 (1974) (Article III standing may not be predicated on an interest held

5  by all members of the public because such interest is necessarily abstract); *Hein v. Freedom From*

6  *Religion Foundation, Inc.* 551 U.S. 587, 598 (2007) (taxpayers lacked standing to challenge

7  President's "faith-based initiatives" where their injury was not distinct from that suffered by other

8  taxpayers).

9         Plaintiffs lack standing to pursue their claims in federal court because their asserted

10  injury—diluted representation in the state Legislature—is a general grievance shared by the

11  public at large.  *Drake*, 664 F.3d at 774.

12         **B.    Plaintiffs' Claims Are Barred by the Political Question Doctrine.**

13         The political question doctrine originated in Chief Justice Marshall's observation that

14  "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the

15  executive, can never be made in this court." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170

16  (1803).  "The Supreme Court has since explained that '[t]he nonjusticiability of a political

17  question is primarily a function of the separation of powers.'" *Corrie v. Caterpillar*, 503 F.3d

18  974, 980 (9th Cir. 2007) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).  The presence of a

19  political question deprives the court of subject matter jurisdiction. *See id*. at 980-82; *see also No*

20  *GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1382 (9th Cir. 1988) ("[T]he

21  presence of a political question precludes a federal court, under Article III of the Constitution,

22  from hearing or deciding the case presented.").

23         In *Baker*, the Court set out a list of six independent tests that identify whether a political

24  question is raised in a particular case:

25         It is apparent that several formulations which vary slightly according to the settings in
           which the questions arise may describe a political question, although each has one or
26         more elements which identify it as essentially a function of the separation of powers.
           Prominent on the surface of any case held to involve a political question is found [1] a
27         textually demonstrable constitutional commitment of the issue to a coordinate
           political department; or [2] a lack of judicially discoverable and manageable
28         standards for resolving it; or [3] the impossibility of deciding without an initial policy

determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217.

The second *Baker* test—the lack of judicially discoverable and manageable standards—compels dismissal of plaintiffs' claims.  In *Vieth v. Jubelirer*, 541 U.S. 267 (2004), the Supreme Court affirmed the dismissal of a political gerrymander claim, holding that claims alleging political gerrymandering are nonjusticiable because there are no judicially discoverable and manageable standards for adjudicating them.  *Vieth*, 541 U.S. at 290, 305-306 (plurality opinion).[5]  The Court stated:

> Sometimes, however, the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights.
>
> *   *   *   *   *
>
> One of the most obvious limitations imposed by that requirement is that judicial action must be governed by *standard,* by *rule.*  Laws promulgated by the Legislative Branch can be inconsistent, illogical, and ad hoc; law pronounced by the courts must be principled, rational, and based upon reasoned distinctions.

*Id.* at 277-278 (emphasis in original).

The size of the Legislature is fixed by the California Constitution.  Cal. Const. art. IV, § 2.  Plaintiff alleges that the number of legislators remained at 40 Senators and 80 Assemblymembers since 1862.  Complaint ¶¶ 4.16-4.21.  To increase this number would require a constitutional amendment.  Even if this number could be increased by court order, there is no "judicially discoverable and manageable standard" to determine what the size of the Legislature should be.  *See Baker*, 369 U.S. at 217 [factor 2]; *Holder v. Hall*, 512 U.S. 874, 881, 885 (1994) (size of districts cannot be challenged under Section 2 of the Voting Rights Act because the wide range of possibilities makes the choice "inherently standardless").  Further, it would be impossible to

---

[5]  A fifth justice, Justice Kennedy, joined in the result and wrote a concurring opinion which agreed that there is no effective standard for measuring political gerrymander claims.  *Id*. at 317.

decide the correct size "without an initial policy determination of a kind clearly for nonjudicial discretion." *See Baker*, 369 U.S. at 217 [factor 3].

This Court should not attempt to resolve this plainly political question. As the Supreme Court stated in Vieth, "[s]ometimes, . . . the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Vieth*, 541 U.S. at 277.

**II.    THE COMPLAINT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**A.    First Claim—Fourteenth Amendment Privileges and Immunities Clause**

The Privileges and Immunities Clause of the Fourteenth Amendment states "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States[.]" U.S. Const. art. XIV, § 1. Plaintiffs allege that California's legislative districts are so large that plaintiffs are deprived of the "privilege of self-governance," which they define to include the right to vote. Complaint ¶ 5.4. Plaintiffs allege that this deprivation is shared by "California's approximately 40 million people." Complaint ¶ 5.5

The Fourteenth Amendment is one of three amendments adopted in the aftermath of the Civil War. Four years after its adoption, the Supreme Court decided the *Slaughter-House Cases*, 83 U.S. 36, 39 (1872), which considered a statute allowing the creation of a monopoly on animal butchering in the City of New Orleans. The *Slaughter-House Cases* adopted a very narrow interpretation of the Privileges and Immunities Clause, holding that it protected only those rights "which owe their existence to the Federal government, its National character, its Constitution, or its laws." *Id*. at 79. This narrow interpretation has been much criticized, but the Supreme Court recently reaffirmed it:

> For many decades, the question of the rights protected by the Fourteenth Amendment against state infringement has been analyzed under the Due Process Clause of that Amendment and not under the Privileges or Immunities Clause. We therefore decline to disturb the *Slaughter–House* holding.

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 758 (2010).

Plaintiffs' first claim fails because Fourteenth Amendment rights are not analyzed under the Privileges and Immunities Clause. *McDonald*, 561 U.S. at 758.

11

**B.   Second Claim—Fourteenth Amendment Due Process Clause**

The Due Process Clause of the Fourteenth Amendment states no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  Again, plaintiffs allege that California's legislative districts are so large that Plaintiffs are deprived of the Due Process right of "self-governance," which they define to include the right to vote.  Complaint ¶ 5.8.

There is no doubt that the right to vote is fundamental.  "It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'"  *Burdick v. Takushi*, 504 U.S. 428, 433 (1992), quoting *Illinois Bd. of Elections v. Socialist Workers Party,* 440 U.S. 173, 184 (1979).  The right to vote has been interpreted broadly to prevent many voting practices that might debase the right to vote.[6]  And in *Reynolds v. Sims*, 377 U.S. 533 (1964), one of the seminal opinions of the Twentieth Century, the Supreme Court held that "one person, one vote" doctrine is applicable to both houses of state legislatures:

> We hold that, as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis.  Simply stated, an individual's right to vote for state legislators is

---

[6] *See Reynolds v. Sims*, 377 U.S. 533, 554-55 (1964):

Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections.  A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear.  It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U.S. 651, and to have their votes counted, *United States v. Mosley*, 238 U.S. 383.  In *Mosley* the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box.' 238 U.S., at 386.  The right to vote can neither be denied outright, *Guinn v. United States*, 238 U.S. 347, *Lane v. Wilson*, 307 U.S. 268, nor destroyed by alteration of ballots, *see United States v. Classic*, 313 U.S. 299, 315, nor diluted by ballot-box stuffing *Ex parte Siebold*, 100 U.S. 371, *United States v. Saylor*, 322 U.S. 385.  As the Court stated in *Classic*, 'Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted . . . .' 313 U.S., at 315.  Racially based gerrymandering, *Gomillion v. Lightfoot*, 364 U.S. 339, and the conducting of white primaries, *Nixon v. Herndon*, 273 U.S. 536, *Nixon v. Condon*, 286 U.S. 73, *Smith v. Allwright*, 321 U.S. 649, *Terry v. Adams*, 345 U.S. 461, both of which result in denying to some citizens their right to vote, have been held to be constitutionally impermissible.

---

12

1  unconstitutionally impaired when its weight is in a substantial fashion diluted when
2  compared with votes of citizens living on other parts of the State.

*Id.* at p. 568.

3   Plaintiffs have not pled a claim under the Due Process Clause for two reasons.  First, to the

4  extent that they complain that they have been deprived of the right of "self-governance," the

5  proper focus should be on the constitutional guarantee to each State of "a Republican form of

6  government," U.S. Const. art. IV, § 4, a guarantee plainly fulfilled by California's elected,

7  bicameral legislature.  *See Duncan v. McCall*, 139 U.S. 449, 461 (1891) "distinguishing feature of

8  [republican form of government] is the right of the people to choose their own officers for

9  governmental administration, and pass their own laws in virtue of the legislative power reposed in

10  representative bodies, whose legitimate acts may be said to be those of the people themselves[.]").

11  Second, to the extent that they complain that they have been deprived of the right to vote, there is

12  no authority for the proposition that there is a constitutional limit on the size of legislative

13  districts.  As far as legislative districting is concerned, there is a right to an equally-weighted vote

14  (*Reynolds*) and a prohibition on racially-based redistricting (*Gomillion*).  Certainly there has been

15  no interference, and none is alleged, with any individual plaintiff's right to vote in elections for

16  the state Assembly or Senate.

17  ### C.   Third Claim—Fourteenth Amendment Equal Protection Clause

18   The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny

19  to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV

20  § 1.  Plaintiffs allege that the size of California's legislative districts

21  
22   "violates the Equal Protection Clause because it denies the opportunity for self-
      governance (as defined herein) based on wealth and results in less women, blacks,
      Hispanics, Native Americans, and members of political parties being elected than
23     would be expected if the number of representatives was not arbitrary and unfair."

24  Complaint ¶ 5.13.

25   Plaintiffs have not pled a claim under the Equal Protection Clause for the same reason that

26  they have not pled a claim under the Due Process Clause.  *See* § B above.  To the extent that they

27  complain that they have been deprived of the right to vote, there is no authority for the

28  proposition that the right to vote limits the size of legislative districts.  Rather the Equal

13

1  Protection Clause prevents the dilution of the weight of one individual's vote in comparison to the

2  votes of citizens living on other parts of the state.  *Reynolds*, 377 U.S. at 568.

3       Ironically, much of the constitutional "harm" of which plaintiffs complain is generated by

4  the judicial enforcement of the right to vote.  Until 1965, California apportioned legislative

5  districts pursuant to a "Federal Plan" wherein the Assembly was apportioned on a population

6  basis while the Senate was apportioned on a geographic basis.  *Silver v. Jordan*, 241 F.Supp. 576,

7  578 (S.D. Cal. 1964), *aff'd* 381 U.S. 415 (1965).  No county could have more than one Senator,

8  and no senator could represent more than three counties.  *Ibid*.  The Federal Plan greatly

9  enhanced the representation of smaller counties, such as plaintiff Siskiyou County, in the Senate.

10  By 1960 the 38th Senate District (Los Angeles County) had a population of 6.4 million, while the

11  28th Senate District (Mono, Inyo, and Alpine counties) had a population 14,291, a ratio of almost

12  450:1.  *Id*.  Citing *Reynolds*, a three-judge panel of the Central District held that the Federal Plan

13  violated the Equal Protection Clause because it "dilutes one's right to vote solely because of

14  where one happens to reside."  *Id*. at p. 582.  Ever since, both houses of the California Legislature

15  have been apportioned by population.

16       Plaintiffs have not pled a claim under the Equal Protection Clause.

17      **D.**    **Fourth Claim—Fourteenth Amendment Abridgement Clause**

18       Section 2 of the Fourteenth Amendment states in pertinent part:

19       [W]hen the right to vote at any election for the choice of electors for President and

20  Vice President of the United States, Representatives in Congress, the Executive and
Judicial officers of a State, or the members of the Legislature thereof, is denied to any

21  of the male inhabitants of such State, being twenty-one years of age, and citizens of
the United States, or in any way abridged, except for participation in rebellion, or

22  other crime, the basis of representation therein shall be reduced in the proportion
which the number of such male citizens shall bear to the whole number of male

23  citizens twenty-one years of age in such State.

24  Plaintiffs suggest that if "the Court cannot resolve this case based upon the various constitutional

25  causes of action raised herein," the Court should decrease the number of California

26  representatives in Congress "as a remedy."  Complaint ¶ 5.15.

27       This "claim" must be dismissed because it is not an independent claim.  It is a prayer for

28  relief in the event that plaintiffs succeed on any other claim.

### E.   Fifth Claim—First Amendment

The First Amendment states

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

Plaintiffs allege that "[a]s the value of each citizen's vote has been diminished [by growing legislative districts], the rights to assemble with their representatives and Petition for Redress of Grievances is diminished in the same proportion."  Complaint ¶ 5.21.

Plaintiffs have not stated a claim for deprivation of the First Amendment right to assemble and petition because they concede that they *have* exercised their right to petition their state government.  Complaint ¶ 3.22 (each plaintiff "has petitioned the California legislature and/or the Secretary of State").  Plaintiffs' objection is that "[n]ot one of the Plaintiffs received a response." *Id.*  But there is no First Amendment right to receive a response.  "Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 285 (1984).

### F.   Sixth Claim—Federal Voting Rights Act, 52 U.S.C. § 10301

Section 2 of the Federal Voting Rights Acts states, in pertinent part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color[.]

52 U.S.C. § 10301(a).  Plaintiffs Shasta Nation Tribe, Roy Hall Jr., Kyle Carpenter, and Win Carpenter, allege that the Shasta Nation Tribe has not been recognized by California, that having a Native American in the Legislature may well change that, and that an increase in the number of representatives is required "to allow Native Americans, as well as ethnic minorities and women, to meaningfully participate in self-governance."  Complaint ¶¶ 5.23-5.28.

Plaintiffs have not stated a claim under § 2 because "a plaintiff cannot maintain a § 2 challenge to the size of a government body[.]" *Holder*, 512 U.S. at 885.  As the Court explained

15

1   in *Holder*, "the search for a benchmark [to measure vote dilution] is quite problematic when a § 2

2   dilution challenge is brought to the size of a government body.  There is no principled reason why

3   one size should be picked over another as the benchmark for comparison."  *Id*. at 881.

4     **G.  Seventh Claim—Ninth Amendment**

5     The Ninth Amendment states "The enumeration in the Constitution, of certain rights, shall

6   not be construed to deny or disparage others retained by the people."  Plaintiffs allege that the

7   Legislature employs more than 2,100 assistants who perform functions that should be performed

8   by someone elected.  Complaint ¶ 5.35.  Plaintiffs further allege that the failure to increase the

9   size of the Legislature, and concomitant employment of assistants, violate the Ninth Amendment.

10  Complaint ¶ 5.37.

11    Plaintiffs have not pled a claim under the Ninth Amendment because that amendment "'has

12  not been interpreted as independently securing any constitutional rights for purposes of making

13  out a constitutional violation.'"  *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121,

14  1125 (9th Cir. 1996), quoting *Schowengerdt v. United States,* 944 F.2d 483, 490 (9th Cir. 1991),

15  *cert. denied,* 503 U.S. 951 (1992); *accord Jenkins v. C.I.R.*, 483 F.3d 90, 92 (2d Cir. 2007).  "'It

16  is a common error, but an error nonetheless, to talk of 'ninth amendment rights.'  The ninth

17  amendment is *not* a source of rights as such; it is simply a rule about how to read the

18  Constitution.'"  *San Diego County Gun Rights Committee*, 98 F.3d at 1125, quoting Laurence H.

19  Tribe, American Constitutional Law 776 n. 14 (2d ed. 1988) (emphasis in original).

20          **CONCLUSION**

21    For the reasons set forth above, plaintiffs' complaint should be dismissed without leave to

22  amend.

23

24

25

26

27

28

16

1    Dated:  May 30, 2017                  Respectfully Submitted,

2                                 XAVIER BECERRA
                                 Attorney General of California

3                                 MARK R. BECKINGTON
                                Supervising Deputy Attorney General

4

5

6                                 */s/ George Waters*
                                GEORGE WATERS

7                                 Deputy Attorney General
                                *Attorneys for Defendant Alex Padilla*

8

9    SA2017107016
    12705904.doc

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Alex Padilla's Notice of Motion & Motion to Dismiss; Memorandum of Points and Authorities
(2:17-cv-00973)

# CERTIFICATE OF SERVICE

Case Name: **Citizens for Fair Representation, et al. v. Secretary of State Alex Padilla**          No.   **2:17-cv-00973**

I hereby certify that on <u>May 30, 2017</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ALEX PADILLA'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES [FRCP 12(b)(1), 12(b)(6)]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 30, 2017</u>, at Sacramento, California.

Tracie L. Campbell                    */s/ Tracie Campbell*
Declarant                                  Signature

SA2017107016
12706633.doc