XAVIER BECERRA, State Bar No. 118517
Attorney General of California
MARK R. BECKINGTON, State Bar No. 126009
Supervising Deputy Attorney General
GEORGE WATERS, State Bar No. 88295
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone:  (916) 210-6059
 Fax:  (916) 324-8835
 E-mail:  George.Waters@doj.ca.gov
*Attorneys for Defendant Alex Padilla*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CITIZENS FOR FAIR REPRESENTATION; CITY OF FORT JONES; THE CALIFORNIA LIBERTARIAN PARTY; THE CALIFORNIA AMERICAN INDEPENDENT PARTY; THE MARIN COUNTY GREEN PARTY; MARK BAIRD; JOHN D'AGOSTINI; LARRY WAHL; SHASTA NATION INDIAN TRIBE; ROY HALL JR; WIN CARPENTER; KYLE CARPENTER; PATTY SMITH; KATHERINE RADINOVICH; DAVID GARCIA; LESLIE LIM; KEVIN MCGARY; TERRY RAPOZA; HOWARD THOMAS; MICHAEL THOMAS; STEVEN BAIRD; MANUEL MARTIN; OTHERS SIMILARLY SITUATED; AND DOES 1-30,**<br><br>                              Plaintiffs,<br><br>       v.<br><br>**SECRETARY OF STATE ALEX PADILLA,**<br><br>                              Defendant. | 2:17-cv-00973<br><br>**JOINT STATUS REPORT**<br><br>Date:          September 8, 2017<br>Time:          10:00 a.m.<br>Courtroom:  3<br>Judge:         The Honorable Kimberly J. Mueller<br>Trial Date:   Not Assigned<br>Action Filed:  May 9, 2016 |

1

Plaintiffs and Defendant Secretary of State submit the following Joint Status Report pursuant to Civil Local Rule 240.

**A.    Summary of Claims and Legal Theories:**

**Defendant's Position:** Based on the complaint filed 5/9/17, Plaintiffs claim that California legislative districts are too large and violate several provisions of federal law:  (1) Privileges and Immunities Clause of the Fourteenth Amendment, (2) Due Process Clause of the Fourteenth Amendment, (3) Equal Protection Clause of the Fourteenth Amendment, (4) Apportionment Clause of the Fourteenth Amendment, (5) First Amendment, (6) Voting Rights Act, 52 USC §§ 10301 et seq., and (7) Ninth Amendment.  Plaintiffs seek declaratory relief and a declaration establishing smaller districts and imposing a moratorium on the hiring of legislative assistants who perform legislative functions.

**Plaintiffs Position:** CFR plaintiffs believe this case is the 21st Century version of *Baker v Carr, Wesberry v Sanders*, and *Reynolds v Sims*. In the opening half of the 20th century, there was a massive population shift away from rural areas and toward suburban and urban communities, which created significant disparities in the size of voting districts, which legislators had scant incentive to make equal.  Voters in affected districts claimed that the failure to reapportion the voting districts to provide people with votes of equal value was fundamentally unfair, arbitrary, and unconstitutional. After deciding to wade into this "political thicket", the Supreme Court determined "the fundamental principle of representative government in this country is one of equal representation for equal numbers of people." *Reynolds*, 377 U.S. 533, 560-561.

This case focuses on the "representation" component of the one person/one vote principle. Plaintiffs claim districts in California have become so large that legislators are incapable of performing those representative functions for the people contemplated by the original Constitution and the Fourteenth Amendment. In the Amicus brief Los Angeles County filed on behalf of several urban areas in *Evenwel* v *Abbott*, 136 S. Ct. 120 (2016), available at http://www.scotusblog.com/wp-content/uploads/2015/10/Evenwel-LAbrief092515.pdf , urban areas argued the Constitution provided for "virtual representation" of population by legislators

2

1   who are essentially philospher-kings who have no actual responsibilities to the people at large. This

2   case challenges that view of representation.

3       The relief CFR plaintiffs seek through a number of causes of action and legal theories is a

4   declaration that representation by a state legislator under the Fourteenth Amendment must be

5   more that "virtual". Representation must be tied to the capacity to actually serve the constituents

6   in a district the legislator is elected and then required to represent. Further, that California's

7   limitation of legislators to 120 (40 senators and 80 Assembly members) fails that test and is

8   therefore unconstitutional.

9       CFR's "equal protection" Fourteenth Amendment theory based on invidious discrimination

10  will require the State of California to establish that it has a compelling state interest in having

11  only 120 legislators represent California's 40 million people once plaintiffs have proven that

12  California's constitutions are racially biased. Plaintiffs other theories include that California's

13  constitutions have created a legislative oligarchy where power is held mostly by a few men who

14  cannot represent the constituents they are required to serve. This has created an oligarchy contrary

15  to the federal structure of our government and the evolution of the norms related to self

16  governance as they have evolved in this country through its constitution, statutes, treaties and the

17  world through the development of customary international law. See e.g. Richard Briffault, 2002,

18  Review: The Contested Right to Vote, Columbia University Academic Commons,

19  https://doi.org/10.7916/D81C1X4G.

20      Plaintiff's legal theories include that California's present malapportionment violates a.)

21  sections 1 and 2 of the Fourteenth Amendment; b.) the federal structure of the United States

22  Constitution; c.) treaties and "customary" international law; d.) plaintiffs enumerated and

23  unenumerated rights protected by the Ninth Amendment; and e.) their first amendment rights to

24  not be retaliated against for exercising their First Amendment rights to engage in political speech.

25      Following this Court's grant of declaratory relief that California's current cap on statewide

26  legislators is unconstitutional, plaintiffs anticipate the Court will require plaintiffs to establish

27  what level of representation is proper and necessary to comply with *Evenwel*'s standard regarding

28  that representation which is necessary under the Fourteenth Amendment. CFR plaintiffs believe

3

1  that injunctive relief may be required to force California to disengage from its theory of "virtual

2  representation". Until this Court rules on the merits of plaintiffs malapportionment claim it is

3  unlikely that plaintiffs will seek a moratorium on the the hiring of legislative assistants. In fact,

4  plaintiffs are willing to abandon any request for such relief if it imperils this Court hearing their

5  basic malapportionment claims. Plaintiffs concede the Secretary of State, as the chief elections

6  officer, likely has no constitutional authority to grant this relief and therefore the request for it

7  may be inappropriate.

8      **B.**   **Status of Service:**

9      Defendant Secretary of State has been served and has appeared.

10      **C.**   **Joinder of Additional Parties:**

11      **Defendant's Position:** Defendant notes that the sole defendant in this case, the Secretary of

12  State, has no authority to redistrict or to change the size of legislative districts.  In California,

13  redistricting is done by Citizens Redistricting Commission.  Cal. Const. art. XXI, § 1.

14      **Plaintiff's Position:** This is a malapportionment challenge, which if upheld, will impact

15  California elections of Statewide legislative bodies. Accordingly, the appropriate defendant is the

16  California Secretary of State. *Silver v. Jordan*, 241 F. Supp. 576, 579 (S.D. Cal. Dec. 3, 1964). *Cf.*

17  *Indep. Party v. Padilla*, 184 F. Supp. 3d 791 (E.D. Cal. May 3, 2016); *Rubin v. Padilla*, 233 Cal.

18  App. 4th 1128, 183 Cal. Rptr. 3d 373 (Cal. App. 1st Dist. Jan. 29, 2015). See also *Assembly v.*

19  *Deukmejian*, 639 P.2d 939 (1982)(The Attorney General is not the official charged with ensuring

20  proper application of the state's elections laws. That is the role of the Secretary of State,

21  California's chief elections officer. ( Gov. Code, § 12172.5.)") *Id*., at 946-947. Plaintiffs have not

22  joined California's Citizen for Redistricting (the Commission) because Article XXI § 3(a) states:

23  "The commission has the sole legal standing to defend any action regarding a certified final map,

24  …"

25      CFR is not challenging California's redistricting or any maps related thereto and thus the

26  Commission does not appear to be an appropriate defendant upon initial examination. However,

27  CFR has asked the Commission to determine whether it has any jurisdiction to apportion the

28  number of districts in California or if not, whether it has any duty to bring this dire issue to the

attention of the California officials that do have jurisdiction over it, and has requested the Commission intervene in this suit if it determines its presence would help the Court resolve the apportionment issues this case raises. A copy of Mr. Stafne's written testimony before the Commission on September 1, 2017 is attached hereto. If the Court orders or the Secretary requests such, CFR will join the Commission as a defendant regarding its apportionment challenge, but CFT at present does not intend to bring any sort of gerrymander claim challenging the redistricting maps.

**D.   Contemplated Amendments to Pleadings:**

**Defendant's' Position:**  Plaintiffs have filed a motion to amend the complaint.  Dkt. 11.

**Plaintiffs' Position:** Because of the nature of this lawsuit, it is likely that additional amended and/or supplemental complaints may need to be filed. Further, there is a good possibility applicable complaints may need to be amended to conform to the evidence.

**E.   Statutory Bases of Jurisdiction and Venue:**

**Defendant's Position:**  Jurisdiction—28 U.S.C. §§ 1331 and 1343.  Venue-- 28 U.S.C. § 1391(b).

**Plaintiff's Position:**

Jurisdiction is founded on 28 U.S.C. 1331 and 1343 (§§ 3 and 4).

Jurisdiction exists only in a three judge panel. 28 U.S.C. §2284(a).

Supplemental jurisdiction over State matters exists pursuant to 28 U.S.C. §1367(a)

Venue is proper under 28 U.S.C. §1391(b)

2 U.S.C. § 6

24 U.S.C. § 1981, 1983, & 1985;

All statutes and treaties and customary international law plead in the Proposed First Amended Complaint which is attached to Plaintiffs' motion for leave to amend the complaint (Dkt. 11-1)

Jurisdiction challenging constitutionality of apportionment of statewide legislative bodies exists pursuant to 28 U.S.C. § 2284 in a three judge district court.

/ / /

5

**F.** **Anticipated Discovery:**

**(1) What changes, if any, should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement as to when disclosures under Rule 26(a)(1) were made or will be made, and whether further discovery conferences should be held:**

Disclosures under Rule 26(a)(1) have not been made.  Defendant requests that disclosure be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiff has no objection to this request.

**(2) The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases:**

Defendant requests that all discussion of discovery be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiff has no objection to this request.

**(3) What changes, if any, should be made in the limitations on discovery imposed under the Civil Rules and what other limitations, if any, should be imposed:**

Defendant requests that all discussion of discovery be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiff has no objection to this request.

**(4) The timing of the disclosure of expert witnesses and information required by Rule 26(a)(2):**

Defendant requests that all discussion of discovery be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiff has no objection to this request.

**(5) Proposed dates for discovery cut−off:**

Defendant requests that all discussion of discovery be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiff has no objection to this request.

**G.** **Contemplated Dispositive Motions:**

Defendant's motion to dismiss, and plaintiffs' motion to amend the complaint, are scheduled to be heard 9/8/17.  Plaintiffs have no objection to this request for the time being.

**H.** **Methods to Avoid Unnecessary Proof of Evidence:**

Defendant requests that all discussion of discovery and trial preparation be postponed until after a hearing on Defendant's pending motion to dismiss.

**I.**   **Proposed Date for Final Pretrial Conference:**

Defendant requests that all discussion of discovery and trial preparation be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiffs have no objection to this request for the time being.

**J.**   **Proposed Date for Trial:**

**Defendant's Position:** Defendant requests that all discussion of discovery and trial preparation be postponed until after a hearing on Defendant's pending motion to dismiss.  No party has demanded a jury.

**Plaintiffs' Position:**  Plaintiffs have no objection to this request with regard to any discussion of discovery be postponed until after a hearing on the motion to dismiss. However, defendant is wrong in suggesting that Plaintiffs have not requested a jury. Plaintiffs request a jury in their FAC and reiterate that request here.

**K.**   **Appropriateness of Special Procedures:**

Plaintiffs have filed a notice seeking referral to a three judge court pursuant to 28 USC § 2284.  Dkt. 12.

**L.**   **Proposed Modification of Standard Pretrial Procedures:**

Defendant requests that all discussion of discovery and trial preparation be postponed until after a hearing on Defendant's pending motion to dismiss.  Plaintiffs have no objection to this request for the time being.

**M.**   **Related Cases:**

**Defendant's Position**: No related cases.

**Plaintiffs' Position:**  See *LaVergne v. US House of Representatives* 1:17-cv-00793.

**N.**   **Settlement Discussions:**

**Defendant's Position**:  This case is not susceptible to settlement.

**Plaintiffs' Position:**   Plaintiff's believe that there are areas of agreement that should be explored and that this case is susceptible to settlement.

/ / /

/ / /

7

**O.    Others Issues:**

**Defendant's Position:**  None.

**Plaintiffs' Position:**  Defendant has filed a motion to dismiss plaintiff's original complaint based on Fed. R. Civ. Pro. 12(b)(1) and (6). Defendant has refused to stipulate to the filing of the FAC and has, in fact opposed this court granting leave to file the FAC. Plaintiff's object to this procedure as being in bad faith and sanctionable.

Further, Plaintiffs contend this Court as currently configured cannot decide a motion to dismiss pursuant to Fed. R. Civ. Pro. 12 (b)(6), but can only consider the issue of whether the FAC is "constitutionally substantial". See e.g. *Shapiro v. McManus*, 136 S. Ct. 450, 455-456 (2015); *Igartúa v. Obam*a , 842 F.3d 149, 156-9 (1st Cir. 2016)(a panel of the First Circuit interpreting the meaning of "constitutionally substantial".)

Dated:  September 1, 2017                              Respectfully submitted,

                                                      XAVIER BECERRA
                                                      Attorney General of California
                                                      MARK R. BECKINGTON
                                                      Supervising Deputy Attorney General

                                                      /s/ George Waters
                                                      GEORGE WATERS
                                                      Deputy Attorney General
                                                      *Attorneys for Defendant Alex Padilla*

                                                      /s/ Gary L. Zerman (as authorized on 9/1/17)
Dated:  September 1, 2017
                                                      Gary L. Zerman
                                                      Attorney for Plaintiffs

Dated:  September 1, 2017                              /s/ Scott Stafne (as authorized on 9/1/17)

                                                      Scott Stafne
                                                      Attorney for Plaintiffs

SA2017107016
12804841.doc

# STAFNE LAW
## Advocacy & Consulting

(360) 403-8700          239 N. Olympic Avenue  Arlington, WA 98223          FAX (360) 386-4005
www.STAFNELAW.com

August 31, 2017

votersfirstact@crc.ca.gov
Ms. Christina Shupe - Senior Operations Manager
Commission Members
California Citizens Redistricting Commission (CRC)
1130 K Street, Suite 101
Sacramento, CA 95814

re:   *Your September 1, 2017 Public Meeting*
      *CFR's Attendance and Submission of Written Testimony*

Members of the Commission:

My name is Scott Stafne. Gary Zerman and I represent a diverse group of Californians known as Citizens for Fair Representation (CFR). They come from different ethnic, religious, educational, geographic, economic and political backgrounds. Yet all have one thing in common - that is their concern about California's statewide system of electing state legislators - Senators and Assembly members alike.

On August 28, 2017, Mr. Zerman submitted his August 25, 2017 letter/written public testimony to Ms. Shupe, addressed to the Commissioners, for this meeting.  That included as an attachment/exhibit a copy of the First Amended Complaint (FAC) in *CFR v California Secretary of State Alex Padilla*, Case No. 2:17-cv-00973-KJM-CMK (E.D. Cal.) We provided the Commission with a copy of the FAC to bring to the Commission's attention CFR's position that California needs to increase  the number of Senators(40) and Assembly members (80) to provide its 40,000,000 people with that measure of representation contemplated by the the United States Constitution and specifically the Fourteenth Amendment thereof.

Given the Commission's experience with attempting to create legislative districts which respect the "the geographic integrity of any city, county, city and county, local neighborhood, or local community of interest … in a manner that minimizes their division" CFR believes the Commission should provide comment to the State legislature well before the 2020 census regarding the feasibility of performing this task - while the number of legislators is capped at 120 members.

CFR did not sue the Commission in *CFR v Padilla* because its members understand that achieving fair apportionment of California's legislature is not likely a matter within your

jurisdiction. Const. Art. XXI, § 3 provides that "the commission has the sole legal standing to defend any action regarding a certified final map,...," and CFR's complaint is not about any map.[1]

If, after review of CFR's comments, the Commission believes it should be a party to this lawsuit we respectfully urge it to consider intervening in the *CFR v Padilla* in order to help resolve the question of whether this body can perform its job pursuant to California Constitution XXI § (2)(d) of establishing diverse districts legislative districts capable of representation within the meaning of the United States Constitution <u>without</u> increasing the number of state legislative districts.

My oral and written testimony on behalf of CFR today before this Commission is directed towards the agenda topics identified as "Legal Advisory Discussion Topics" and "New Business" on your published agenda. As you know the "New Business" agenda item affords the opportunity "to address the Commission on items that are within the Commission's jurisdiction but are not on the the noticed agenda."[2]

I.   IS THE CAP ON THE NUMBER OF LEGISLATORS WITHIN THE JURISDICTION OF THE COMMISSION TO CHANGE?

The first topic I would like to discuss is whether the cap on the number of legislators is a matter within the jurisdiction of the Commission?  CFR believes it may be.

The "Summary Report and Compilation of 2010 Commission actions and Suggestions for Future Citizens Redistricting Commission" (Summary Report), compiled and written in 2016,[3] indicates many citizens have confusion regarding the application of the constitutional criteria to the districting decisions the Commission must make.[4]  CFR understands the confusion because it

---

[1] CFR sued Secretary of State Padilla because he is the chief elections official for the State of California and appears to be the official required to be sued in order to obtain injunctive relief against the State.

[2] *See* CRC's Meeting Notice and Agenda, Commission Business Meeting - Friday, September 1st, 2017. A copy of this notice is available from the following website which was last accessed on Tuesday, August 29. 2016.
http://wedrawthelines.ca.gov/downloads/meeting_handouts_201709/hearings_20170901_sac_agenda.pdf

[3] CRC's Summary Report indicates it was compiled and written by Dr. Gabino Aguirre in April 2016, *see* http://wedrawthelines.ca.gov/downloads/meeting_handouts_201607/20160713_crc_handbook_final.pdf and was last accessed for purposes of providing this testimony on August 29, 2017.

[4] The Summary Report states at page 26:

5. Setting Public Expectations Commission Action: *The Commission was eager and excited to hear from the public but quickly realized there was a confusion regarding the application of constitutional criteria.*

is apparent from the language of Article XXI and the voters guide materials related to proposition 11.

A.  *Article XXI Does not require this Commission to accept that the Senate should have only 40 senators and that the Assembly should have only 80 members.*

The [FAQ section](#)[5] of this Commission's web site states:

**Q. What is the Commission?**

A.  Every 10 years, after the federal census, California must redraw the boundaries of its Congressional, State Senate, State Assembly, and State Board of Equalization districts, to reflect the new population data. Now those lines will be drawn by the Commission. California voters authorized the creation of the Commission when they passed the Voters First Act, which appeared as Proposition 11 on the November 2008 general election ballot. Under the Act, the Commission is charged with drawing the boundaries of California's Congressional, Senate, Assembly and Board of Equalization electoral districts.

&ast;                                   &ast;                                   &ast;

**Q. What is the difference between reapportionment and redistricting?**

A.  Reapportionment is the permanent process by which seats in the US House of Representatives are redistributed among the 50 states according to each census. Redistricting is the process of drawing district lines which means changing the boundaries every ten years following the census.

**Q. Why should Californians have confidence that 14 Commissioners who are unelected and therefore unaccountable to the voters be able to produce district boundaries that are in the voters' best interests?**

A. It was the voters themselves that took the job of redistricting out of the elected legislators hands because of their frustration with a process which served to protect incumbents. The voters supported a new process which would choose 14 citizens with a

---

Commissioner Information/Suggestion(s): The next Commission ought to include information about constitutional criteria in their public education campaign. It should clarify how the CRC must balance competing testimony within constitutional guidelines and mandates.

(Emphasis supplied)

[5] This website can be accessed at: [http://wedrawthelines.ca.gov/faq.html](http://wedrawthelines.ca.gov/faq.html)

myriad of backgrounds, skills and from varied geographic locations to draw district boundaries based on criteria designed to preserve communities of interest.

**Q. Why should I care about redistricting?**

A. One of the greatest powers that the people have is the right to elect their own representatives to conduct the business of their government. How the district boundaries are configured can make the difference between empowering and maximizing the voters' voices or minimizing and muting those voices. The independent Citizens Redistricting Commission is committed to drawing fair districts that reflect the best interests of the people not the incumbent political parties.

*      *      *

**Q. What criteria will the Commission consider in deciding the districts?**

A. The criteria for the Commission to follow is laid out in the Act:

Districts must be of equal population to comply with the US Constitution.

Districts must comply with the Voting Rights Act to ensure that minorities have an equal opportunity to elect representatives of their choice.

Districts must be contiguous so that all parts of the district are connected to each other.

*Districts must respect the boundaries of cities, counties, neighborhoods and communities of Interest, and minimize their division, to the extent possible.*

*Districts should be geographically compact, that is, have a fairly regular shape.*

Where practicable each Senate District should be comprised of two complete and adjacent Assembly Districts and Board of Equalization districts shall be composed of 10 complete and adjacent State Senate Districts.

Districts shall not be drawn to favor or discriminate against an incumbent, candidate, or political party.

This Commission provided a similar description of its role to the Supreme Court in an amicus brief[6] (Az. Amicus) it filed in *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652 (2015). There the Commission asserted: "the voters of California used their legislative power of initiative to create the California's Citizens Redistricting Commission with the power to draw congressional districts and state election districts. Cal. Const., art. XXI, §§ 1, 2; …" Az. Amicus, p. 1. This Commission further asserted: " By initiative, the California

---

[6] A copy of this Commission's amicus brief can be accessed at:
http://sblog.s3.amazonaws.com/wp-content/uploads/2015/02/13-1314-CalCit.pdf

Constitution was amended by the addition of Article XXI, which created CRC, established the requirements for CRC Commissioners, and set the standards CRC must follow in line-drawing." Id., p. 3. And finally, this Commision told the Supreme Court at Az. Amicus, p. 5:

> the redistricting process created by initiatives in California and Arizona ensures that a body fairly representing the various political and other interests in the state, by an impartial process open to public view and input, draws congressional lines that comply with federal constitutional and statutory standards, without consideration of political parties or candidates.

The Commission's description of its duties to the people of California on its website and the Supreme Court of the United States in its Az. Amicus brief paraphrases California Constitution Article XXI §2, which instructs:

> Sec. 2.
> (a) The Citizens Redistricting Commission shall be created no later than December 31 in 2010, and in each year ending in the number zero thereafter.
>
> (b) The commission shall: (1) *conduct an open and transparent process enabling full public consideration of and comment on the drawing of district lines; (2) draw district lines according to the redistricting criteria specified in this article; and (3) conduct themselves with integrity and fairness.*
>            *            *            *
> (d) The commission shall establish single-member districts for the Senate, Assembly, Congress, and State Board of Equalization pursuant to a mapping process *using the following criteria as set forth in the following order of priority:*
>     (1) *Districts shall comply with the United States Constitution.* Congressional districts shall achieve population equality as nearly as is practicable, *and Senatorial, Assembly, and State Board of Equalization districts shall have reasonably equal population with other districts for the same office, except where deviation is required to comply with the federal Voting Rights Act or allowable by law.*
>     (2) Districts shall comply with the federal Voting Rights Act (42 U.S.C. Sec. 1971 and following).
>     (3) Districts shall be geographically contiguous.
>     (4) *The geographic integrity of any city, county, city and county, local neighborhood, or local community of interest shall be respected in a manner that minimizes their division to the extent possible without violating the requirements of any of the preceding subdivisions. A community of interest is a contiguous population which shares common social and economic interests*

*that should be included within a single district for purposes of its effective and fair representation. Examples of such shared interests are those common to an urban area, a rural area, an industrial area, or an agricultural area, and those common to areas in which the people share similar living standards, use the same transportation facilities, have similar work opportunities, or have access to the same media of communication relevant to the election process.* Communities of interest shall not include relationships with political parties, incumbents, or political candidates.

(5) *To the extent practicable, and where this does not conflict with the criteria above, districts shall be drawn to encourage geographical compactness such that nearby areas of population are not bypassed for more distant population.*

(6) To the extent practicable, and where this does not conflict with the criteria above, each Senate district shall be comprised of two whole, complete, and adjacent Assembly districts, and each Board of Equalization district shall be comprised of 10 whole, complete, and adjacent Senate districts.

(Emphasis Added)

The California Supreme Court has also observed this Commission must comply with these redistricting criteria in the order each is listed. *Vandermost v. Bowen*, 53 Cal. 4th 421, 446-7 (Cal. 2012). As you can see from the above cited language - the only Constitution which this Commission is required to take into account for purposes of redistricting pursuant to the requirements of Art. XXI (2)(d) is the United States Constitution. The only reasonable inference from the drafter's exclusion of the California Constitution as one of the criteria for establishing districts is that it was <u>not</u> intended by the people of the State of California to be included in the criteria for establishing California's legislative districts.[7]

Article XXI became a part of California's Constitution through the initiative process. *Id.* Prop. 11 set forth that part of the Amendment which applied to State Legislative Districts. The Official Voter Guide explained the purpose of Amendment was to create districts that are "fair" and assure "districts are drawn so they don't divide neighborhoods and communities

ARGUMENT IN FAVOR OF PROPOSITION 11

---

[7] While § 3(b)(2) provides: "(2) Any registered voter in this state may file a petition for a writ of mandate or writ of prohibition, within 45 days after the commission has certified a final map to the Secretary of State, to bar the Secretary of State from implementing the plan on the grounds that the filed plan violates this Constitution, the United States Constitution, or any federal or state statute", this provision does not instruct the Commission's Members they should not comply with the specific duties conferred upon them by the standards set forth in Const. Art. XXI (d), only that the Commission can be sued if they do not follow this provision, which is a part of California's Constitution by way of an initiative.

There is a serious conflict of interest when legislators are allowed to draw their own district boundaries. They divide up neighborhoods and communities to create districts where they are virtually guaranteed reelection.

          *                    *                    *

Prop. 11 will end this conflict of interest by establishing an independent citizens commission to draw *districts* so *that* they *are* fair. Standards required by this measure *will assure that districts are drawn so they don't divide neighborhoods and communities.*

          *                    *                    *

The commission will include Democrats, Republicans, and independents, and the process will be open to the public. *This will assure a balanced, inclusive process that produces fair districts.*

          *                    *                    *

Proposition 11 will help end the gridlock and force the politicians to start solving problems. *If they don't, we can vote them out of office because they'll have to run in fair districts.*

          *                    *                    *

REBUTTAL TO ARGUMENT AGAINST PROPOSITION 11

YES on 11 ends the conflict of interest of politicians drawing their own election districts.

It means fair election districts drawn by citizens, not politicians, so we can *hold them accountable and throw them out of office if they aren't doing their jobs.*

A "no" vote means politicians continue drawing their own districts and more gridlock in Sacramento.

          *                    *                    *

YES on 11 creates a diverse, qualified, independent commission that will draw fair districts that truly respect California's communities and neighborhoods ***for the first time.***

(bolded, italicized words in original Voters Pamphlet; italicized only words added)

Just a couple of days ago the Supreme Court reiterated in California Cannabis Association v City of Upland, case S234148 (August 28, 2017) that "the people's initiative power, [is] " 'one of the most precious rights of our democratic process.' " (citing cases) It has long been the policy of California courts "to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled."*Associated Home Builders etc., Inc. v. City of Livermore*, 18 Cal. 3d 582, 591(1976)

The reason California voters are confused is because they were specifically told during the election that ratification of Prop 11 would create "fair districts" that "don't divide neighborhoods and communities." And that is precisely what the criteria for creating such districts requires.

Achievement of the objectives set forth in Article XXI § 2(d), (1), (2), (4), and (5) is impossible if the number of state legislative districts is limited to the number of Senators and Assembly members, which was arbitrarily capped in 1879 Constitution at 120 legislators in order to protect the racial interests of white people, against Native American Indians and persons of Asian descent. *See* FAC ¶¶ 10.16, 10.19, 10.29, 10.30, 10.42, & footnote 12 (These allegations include references establishing CFR's claims regarding the invidious racial discrimination evidenced by the provisions of California's constitutions. *See e.g.* Dwight Dutschke, "A History of American Indians in California"[8]; Seto, Greg " '*The Chinese Must Go': The Workingmen's Party and the California Constitution of 1879*" California Supreme Court Historical Society 2013 Student Writing Competition Second Place Prize winning Entry, pp. 15-31 (2013)[9].

Limiting the number of Senate members to 40 arbitrarily unfairly bloats the size of senate districts to approximately 1,000,000 constituents per Senator. Similarly, limiting the number of assembly members to 80 unfairly bloats the size of Assembly districts to approximately 500,00 constituents. Such large districts prevent this Commission from performing its constitutional responsibilities of creating fair districts composed of a reasonable number of people having sufficient communities of interests (as promised by Prop 11) to elect a legislator who will represent the people and be replaced if s/he he does not do what the people want done.

Senate District 1 provides a good example of what requiring a "million person" district looks like. Senate District 1 includes 11 counties, is greater in size than the State of West Virginia, and includes localities with distinct and different geographical characteristics[10] and diversity.[11] In other words, it would be impossible for one person to represent the interests of the

---

[8] This book can be accessed at:
http://ohp.parks.ca.gov/pages/1054/files/american%20indians%20in%20california.pdf

[9] This article can be accessed at:
https://www.cschs.org/wp-content/uploads/2014/03/CSCHS_2013-Seto.pdf

[10] Senate District 1 includes suburban, rural, industrial, agricultural, inland, arid, and temperate areas, which may cause the people who live in each locality to have different interests.

[11] The law requires Commissioners have "Appreciation for California's Diverse Demographics and Geography." This means:

(1) An understanding that California's population consists of individuals sharing certain demographic characteristics that may reflect their preferences concerning political

diverse constituency arbitrarily composed of aggregating these one million people together. And the problem is only going to get worse in all California districts because as they grow the 120 legislators claim the power flowing from the growing population of all the people living in their districts, without any ability or intent of actually *representing* them in the manner contemplated by the Constitution, various federal statutes and treaties, as well as customary international law. The notion of self-governance in a representative republic presumes constituents will have reasonable access to the legislator which represents the legislative district where one lives, whether s/he is a voter or not.

In summary, it is understandable why questions are being asked as to whether the members of this Commission understand their Constitutional responsibilities.  Given Article XXI § (2)(d) establishes the Commission's responsibility is to create single districts "for purposes of effective and fair representation" of communities of having similar interests and this appears to be an impossible task if all of California's 40,000,000 residents must be included an arbitrarily limited number of legislative districts, perhaps it makes sense for the Commission to point out this problem to the people before it is tasked with redistricting after the 2020 census.

> B. *The Arbitrary Cap of 120 legislative districts used by this Commission as a basis for the apportionment of California's representative government is unfair, arbitrary, and unconstitutional.*

The members of this Commision are presumably familiar with *Evenwel v Abbott*, 136 S. Ct. 1120 (2016) because their counsel cited it as the basis for seeking final dismissal of *DeWitt v California Citizens Redistricting Commission*, Case 3:15-cv-05261-WHA (N.D.Cal. 2016).  For the Commission's convenience I have attached hereto as exhibits a copy of this Commission's

---

representation, including, but not limited to, race, ethnicity, gender, sexual orientation, and economic status.

(2) An understanding that the people of California reside in many different localities with distinct geographic characteristics that may reflect the preferences of the residents concerning their political representation, including, but not limited to, urban, suburban, rural, industrial, agricultural, coastal, inland, arid, and temperate.

(3) A recognition that California benefits by having effective participation in the electoral process by persons of all demographic characteristics and residing in all geographic locations, including, but not limited to, participation by those persons who in the past, as a consequence of sharing certain demographic characteristics, such as race and ethnicity, have had less opportunity than other members of the electorate to participate in the electoral process.

The law also requires Commissioners take into account "Diversity", which "means the the variety in the racial, ethnic, geographic, economic, and gender characteristics of the population of California.

motion to dismiss, as Exhibit 1[12], and a copy of the court's order granting that motion, as Exhibit 2.[13]   The Commission's web site indicates *DeWitt  i*s currently on appeal. *See* http://wedrawthelines.ca.gov/.

    I bring *Evenwel* to the Commission's attention because it established that Texas state senate districts were properly drawn on the basis of "total population" - rather than the population of those eligible or registered to vote.  Based on this Commission's filing in *DeWitt*, CFR presumes the Commission uses an apportionment standard which is based on the premise that legislators represent the total population of constituents which live legislative districts, rather than on "eligible voters."  If this is true, then the Commission should consider whether there is any evidence that the apportionment of the Senate and Assembly results in a situation where legislators are capable of representing the large population of persons living in California's legislative districts.

    In *Evenwel* the Supreme Court explained:

> As the Framers of the Constitution and the Fourteenth Amendment comprehended, representatives serve all residents, not just those eligible or registered to vote. See *supra,* at ___ - ___, 194 L. Ed. 2d, at 298-301. Nonvoters have an important stake in many policy debates — children, their parents, even their grandparents, for example, have a stake in a strong public-education system — and in receiving constituent services, such as help navigating public-benefits bureaucracies. *By ensuring that each representative is subject to requests and suggestions from the same number of constituents, total-population apportionment promotes equitable and effective representation.* See *McCormick* v. *United States*, 500 U. S. 257, 272, 111 S. Ct. 1807, 114 L. Ed. 2d 307 (1991) ("*Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator*.").

*Evenwel v. Abbott*, 136 S. Ct. at 1132-1133. (emphasis added)

    Walking hand-in-hand with the principle of universal representation is the idea that representation should be equal. Accordingly, apportionment should be designed to equalize the people's ability to "make their wishes known" to their elected representatives, *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137, reh'g denied, 365 U.S. 875 (1961). There comes a point, however, where representation becomes impossible because the number of constituents becomes so large that legislators simply cannot represent all the people who live in their districts. That is the point we have reached in California as is made clear

---

[12] A copy of the Commission's motion to dismiss based on the holding in *Evenwel* can also be accessed at http://wedrawthelines.ca.gov/downloads/meeting_handouts_201604/20160415_DeWitt_D_MtnToDismiss.pdf, which was last accessed on August 29, 2017.

[13] A copy of the federal Court's order granting the Commission's motion to dismiss can be accessed at http://wedrawthelines.ca.gov/downloads/meeting_handouts_201605/20160531_DeWitt_C_OrderToDismiss.pdf, which was last accessed on August 29, 2017.

by the example of Senate District 1, a district larger than many states, composed of almost a million people living in different geographic areas with no particularly commonality of interests.

Because the districts are purposely apportioned to protect the power of the legislators at the expense of their having to actually represent the people the very value expected to be gained by a representative republic is now denied to the entire population of California, who all live in bloated and unmanageable legislative districts. And much of California recognises this.[14]

Although Secretary of State Padilla originally announced he would file an amicus brief in *Evenwel*, see 2015 News Release, he never did so. However, Los Angeles, San Francisco and 15 other major urban areas did file an amicus brief, (LA Amicus)[15].

---

[14]  Former Speaker of the California Assembly Robert T. Monagan wrote a book titled ***The Disappearance of Representative Government:  A California Solution*** https://www.amazon.com/Robert-T.-Monagan/e/B001KCGFY2 (1990), where he warned and puts his colleagues on notice of this problem, stating at page 124 (bold added):

> **Our state representative districts contain too many votes at the present time** [1990].  California's population grows rapidly every year, **but the number of districts has remained constant since 1861**. After nearly 130 years, the inevitable result is that **each district contains more people than can be effectively served by its representative**. In 1861 the state had 4,769 constituents per assemblyman, and about 9,499 for each state senator.  Today each member of the Assembly represents more than 150,000 people, and senators have twice that many constituents.

Since Speaker Monagan's book, per the Commission's 2011 Report on Redistricting, assembly districts had more than  tripled and each had about 465,674 constituents, and similarly senate districts also more than tripled and each had about 931,349 (see  CRC Final Report on 2011 Redistricting, August 15, 2011, pg. 11). Further, the 2016 estimates for the population for assembly districts is 490,699, and 981,397 for senate districts, and estimates for 2020 are at 548,147-for assembly and 1,096,294-for senate (see FAC, attached Exhibit A, at pgs. 65-66).

Moreover, also in 1990 the voters spoke passing Proposition 140, which amended the Cal. Constitution, adding to Article IV, Section 1.5, which provides (bold added):

> **The people find and declare** that the Founding Fathers established a system of representative government based upon free, fair, and competitive elections. **The increased concentration of political power in the hands of incumbent representatives has made our electoral system less free, less competitive, and less representative.**
> The ability of legislators to serve unlimited number of terms, to establish their own retirement system, and to pay for staff and support services at state expense contribute heavily to the extremely high number of incumbents who are re-elected. **These unfair incumbent advantages discourage qualified candidates from seeking public office** and create a class of career politicians, instead of the citizen representatives envisioned by the Founding Fathers. **These career politicians become representatives of the bureaucracy, rather than of the people whom they are elected to represent.**
> **To restore a free and democratic system of fair elections**, and to encourage qualified candidates to seek public office, the people find and declare that the powers of incumbency must be limited. Retirement benefits must be restricted, state-financed incumbent staff and support services limited, and limitations placed upon the number of terms which may be served.

[15] The urban areas filing as part of LA's Amicus brief included the following municipalities (which list their population in parentheses following their name: County of Los Angeles, California (10,116,705) Cook County, Illinois (5,246,456)  City of Los Angeles, California (3,928,864)  Chicago, Illinois (2,722,389)  San Francisco, California (852,469)  Columbus, Ohio (835,957)  City of Baltimore, Maryland (622,793)  Atlanta, Georgia (456,002)  Cleveland, Ohio (389,521)  Toledo, Ohio (281,031) Newark, New Jersey (280,579)  Salt Lake City, Utah (190,884)  Dayton, Ohio (141,003)  South Bend, Indiana (101,190)  Trenton, New Jersey (84,034)  Camden, New Jersey (77,332)  Plainfield, New Jersey

LA's summary of argument begins much like all those amici briefs which advocated in *Evenwel* for apportionment based on total population.   It states:

> SUMMARY OF ARGUMENT
> Equality of representation in the Legislature, is a first
> Principle of Liberty, and the Moment, the least departure
> from such Equality takes Place, that Moment an Inroad is
> made upon Liberty.
> John Adams, 1776[16]

> As the Founders proclaimed, and as this Court has held, the bedrock principle of
> our political order is "[e]quality of representation." That principle is honored
> when districts contain equal numbers of residents. *Elected officials represent all*
> *residents of their districts—not merely those who voted for them, or those who*
> *cast a ballot. All persons receive equal representation by those duty-bound to*
> *represent them only where districts are equal in population.*
> &ast;                          &ast;                          &ast;

LA Amicus, p. 3. (Emphasis added)

LA, San Francisco, and other urban areas submitting the LA Amicus brief in *Evenwel* then did a hard U-turn and argued to the Supreme Court that legislators who have no real connection with the people in their district can "*virtually* represent these people," i.e. people they do not know, serve, or particularly want to listen to.

> Representational equality is the bedrock of our republican form of government.
> Our Founders waged a revolution under the banner "No Taxation Without
> Representation." Yet they created a government where a majority of people had
> no right to vote for their representatives. That remained true well into the 20th
> century. Even today, many subject to this nation's laws are disenfranchised, and
> of those who are permitted to vote, few actually do.

> What legitimizes the gap between the voters who actually elect our leaders and
> the majority of people who do not or cannot vote is the concept of "virtual
> representation." Those who pull the lever vote not only on their own behalf, but

---

(50,955)  Kearny, New Jersey (41,837)  City of Bridgeton, New Jersey (25,347). A copy of this brief can be accessed at http://www.scotusblog.com/wp-content/uploads/2015/10/Evenwel-LAbrief092515.pdf

[16]  Cited as footnote 2 in the original amicus brief: Letter to Joseph Hawley (Aug. 25, 1776), quoted in C. James Taylor, ed., FOUNDING FAMILIES: DIGITAL EDITIONS OF THE PAPERS OF THE WINTHROPS AND THE ADAMSES (2015).

vicariously on behalf of their nonvoting children, friends, co-workers and
neighbors. In return, the officials chosen by those who vote "represent[] all
persons residing within [their] district[s], whether or not they are eligible to vote
and whether or not they voted for the official in the preceding election." *Garza,*
918 F.2d at 781 n.5 (Kozinski, J., concurring in part and dissenting in part)
(citing *Davis v. Bandemer*, 478 U.S. 109, 132 (1986)); *see also Shaw v. Reno,*
509 U.S. 630, 648 (1993) (elected officials are "obligat[ed]" to "represent . . .
their constituency as a whole").

The term "virtual representation," which predates the American Revolution, is
not free from controversy. The words were "anathema" to the founding
generation, since the British invoked them to justify denying the colonies a voice
in government. The colonists, the British insisted, were "virtually represented"
by Parliament. See John Hart Ely, DEMOCRACY AND DISTRUST 82 (1980).
Similarly, opponents of women's suffrage argued that women did not need the
vote since they were "virtually represented" by male heads-of-household. See
Alexander Keyssar, THE RIGHT TO VOTE 8, 138-78 (2000)[17].

These particular arguments were rightly rejected. But the underlying concept of
"virtual representation"—that the electorate votes on behalf of the entire
populace, and that the officials whom they elect represent that whole
populace—"has survived in American political theory and in fact has informed
our constitutional thinking from the beginning."

LA's Amicus, at pp. 23-5.

Notwithstanding LA's acknowledgement that our founder's rejected England's claims of
"virtual representation" as nothing less than tyranny and that this same argument was used to
deny women suffrage for centuries, LA urged the Supreme Court to adopt the notion in *Evenwel*.
Fortunately, the majority in *Evenwel* did not.

The problem with LA's theory of virtual representation is that as applied in California it
means "oligarchy" because the legislators are claiming the power to act for all the people in their
district, when they do not actually represent or attempt to represent them (other than virtually).
LA's theory of virtual representation, notwithstanding its references to representational equality,

---

[17]   There is little case law discussing the history of the Nineteenth Amendment. One commentator has suggested this
is unfortunate because the failure to understand the roots of the amendment, detracts from its significance. Siegel,
Reva B., "She the People: The Nineteenth Amendment, Sex Equality, Federalism, and the Family" (2002). Faculty
Scholarship Series. Paper 1106. This paper can be accessed at:
http://digitalcommons.law.yale.edu/cgi/viewcontent.cgi?article=2116&context=fss_papers

is nothing more than the "naked power" theory of representation reflected in the two *Evenwel* concurrences, which was rejected by the majority.

The mandate contained in Article XXI to develop representative districts for Californians pursuant to the criteria § (2)(d) would appear to trump any obligation to continue limiting legislative districts to those which are not representative under the meaning of the United States Constitution and its laws, treaties, and customary international law. At least this is an issue this Commission might want to consider and discuss given each member's own responsibility to follow the United States Constitution.

## II. EACH MEMBER OF THIS COMMISSION HAS A DUTY TO FOLLOW THE CONSTITUTION.

Of course, this Commission has lawyers. And all things being equal it would likely seem reasonable to follow their advice. However, CFR would like to remind their fellow citizens that you also owe a duty to the people to apply the United States Constitution and Article XXI of the California Constitution when you begin the redistricting process following the 2020 census. And now is a good time to start examining these issues.

The Legal Handbook for the Citizens Redistricting Commission, prepared by the Bureau of State Audits in 2010 (Legal Handbook),[18] makes your obligation as a Commissioner to follow the United States Constitution very clear.  For example, **Section 60800, p. 12** of the Legal Handbook states in part: "Ability to be impartial" means ... the applicant has the capacity and willingness, while serving as a member of the commission, to set aside his or her personal views and all of the following considerations in order to evaluate information with an open mind and make decisions that are fair to everyone affected, i*ncluding, but not limited to, the establishment of legislative* and State Board of Equalization *districts that are in compliance with the United States Constitution, the Voting Rights Act of 1965 (commencing with section 1971 of title 42 of the United States Code), and the criteria set forth in subdivision (d) of section 2 of Article XXI of the California Constitution*.[19]);

**Section 60827**. **Relevant Analytical Skills, p. 23** of the Legal Handbook states in part: "(a) "Relevant analytical skills" means the learned abilities that a commissioner may need to successfully complete the work of the commission. … (b) *Abilities related to performing the following tasks shall be considered relevant analytical skills: ... applying the appropriate legal standards, including, but not limited to, the United States Constitution and the Voting Rights Act of 1965*, … ; and working effectively as a member of a group to promote redistricting decisions that are factually and legally defensible and that the commission can agree upon.

---

[18] The Legal Handbook can be accessed at http://wedrawthelines.ca.gov/downloads/legal_guide.pdf which was last vistied on August 29, 2017.

[19] Note this regulation, like the Constitution itself, does not require this Commission limit the number of Senate and Assembly district to 40 and 80. Rather, the direction is to establish district that are capable of being represented. See *Evenwel v Abbott*, supra. *See also infra*.

Another section of the Legal Handbook insures Commission Members are provided the training needed to understand and apply the Constitution to facts and issues which may come before them. **Section 60832, Training of Panel Members, at p. 26** states "[p]rior to any member of the panel performing the duties of a panel member, the bureau shall provide the panel member with training in preparation for the performance of those duties. *The training shall include, but not necessarily be limited to, all of the following subjects: ... (d) The responsibilities of the Commission as set forth in the Voters FIRST Act, the United States Constitution and the Voting Rights Act of 1965 (commencing with section 1971 of title 42 of the United States Code).*

**Section 60855, Training of First Eight Members of Commission, at p. 41** is similar. It states: "Prior to any of the first eight members of the commission performing the duties necessary to select the final six members of the commission, the bureau shall provide the first eight members of the commission with training in preparation for the performance of those duties. The training shall include the following subjects: … *(d) The responsibilities of the Commission as set forth in the Voters FIRST Act, the United States Constitution, and the Voting Rights Act of 1965 (commencing with section 1971 of title 42 of the United States Code).*

III. CONCLUSION

CFR is aware its testimony may raise more questions than it resolves. But these questions need to be asked in order to ensure that the citizens who have been selected to be on this Commission comply with Article XXI § 2 (b)(1), (2), & (3). Does this Commission have the authority to create fair districts, consistent with the criteria set forth in Article XXI § 2 (d) for 40,000,000 people, if they are limited to only redrawing 120 legislative districts?

Thank you for your consideration of these issues.

Very truly yours,

*S/* Scott E. Stafne

# CERTIFICATE OF SERVICE

Case Name:   **Citizens for Fair Representation,**          No.   **2:17-cv-00973**
             **et al. v. Secretary of State Alex**
             **Padilla**

I hereby certify that on September 1, 2017, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATUS CONFERENCE REPORT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 1, 2017, at Sacramento, California.

Chris A. McCartney                              S/*Chris McCartney*
Declarant                                         Signature

SA2017107016
12804816.doc