# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITIZENS FOR FAIR REPRESENTATION, et al., | No. 2: 17-cv-00973-KJM-CMK |
| Plaintiffs, | ORDER |
| v. | |
| SECRETARY OF STATE ALEX PADILLA, | |
| Defendant. | |

      Plaintiffs include a voting rights organization, local government entities, independent political parties and various individual California voters who jointly sue the California Secretary of State, arguing the cap on state legislators has abridged every Californian's right to self-governance. Plaintiffs contend this legislative cap, which was fixed in the late 1800s and does not account for the immense population growth since, dilutes their voting power, impedes their access to their elected officials, and thwarts their efforts to run for office.

      The Secretary of State's motion to dismiss is before the court, along with plaintiffs' motion for leave to amend, and plaintiffs' motion for sanctions. ECF Nos. 9, 11, 23. The court held a hearing on all motions on September 8, 2017, and then submitted the matter.

/////

1

H'rg Mins., ECF No. 27. As explained below, the court DISMISSES the complaint with leave to amend, and DENIES plaintiffs' motion for sanctions.

I. BACKGROUND

    A. Plaintiffs

Plaintiffs are entities and individuals claiming an interest in expanding their access to local government. *See* Compl., ECF No. 1, ¶ 3. Citizens for Fair Representation ("CFR"), a nonprofit comprised of California voters and government officials, alleges an interest in reasonably sized districts and competitive elections so people who are not wealthy can run for office. *Id.* ¶¶ 3.1-3.2. The California Libertarian Party and the California American Independent Party allege an interest in reducing the size of California's districts to foster more independent political candidates.[1] *Id.* ¶ 3.6. The Shasta Tribe of Indians and its Chief allege an interest in promoting the tribe's self-governance through greater government access. *Id.* ¶¶ 3.17-18. Siskiyou County alleges an interest in greater veto power over harmful legislative policies, emphasizing its veto power has diminished because the County now shares a Senator and Assemblymember with several other counties. *Id.* ¶ 3.5. The City of Fort Jones, a municipal subdivision of Siskiyou County, alleges "an interest in protecting the health and safety of its citizens." *Id.* ¶ 3.4.

The complaint also names numerous individuals as plaintiffs. John D'Agostini, the El Dorado County Sheriff, alleges in his personal capacity an interest in ensuring those within his jurisdiction have adequate representation. *Id.* ¶ 3.11. Terry Rapoza, Howard Thomas and Michael Thomas are California voters with "an interest in adequate representation." *Id.* ¶ 3.13. Kyle Carpenter, who recently turned 18, alleges an interest in preserving his voting power, as it "is already losing value." *Id.* ¶ 3.19. Mark Baird alleges an interest in reviving his steadily diminishing voting power. *Id.* ¶ 3.10. David Garcia, Leslie Lim and Kevin McGary are ethnic minorities who allege an interest in "fair representation according to their ethnic make-up as a

---

[1] Although the Marin County Green Party is listed as a plaintiff in the caption it is not mentioned in the body of the complaint.

proportion of the population." *Id.* ¶ 3.15. Larry Wahl alleges a personal interest in a less-encumbered legislature, highlighting a harm he suffered when the legislature took too long to address the Oroville Dam's spillway erosion. *Id.* ¶ 3.12. Steve Baird and Manuel Martin, both of whom recently ran unsuccessful campaigns for legislative office, allege an interest in increased opportunities for candidates to run for office. *Id.* ¶¶ 3.20, 3.23. Patty Smith and Katherine Radinovich both allege an interest in increased opportunities for women in office. *Id.* ¶ 3.14.

B. The Complaint

Plaintiffs sue the Secretary of State, Alex Padilla, in his official capacity, alleging a diminished right to self-governance. They challenge the current cap on state legislators of 40 Senators and 80 Assemblymembers, which has been fixed by the California Constitution since the late 1800s, despite the state's considerable growth since then. *Id.* ¶ 4.2; *see also* Cal. Const. art. IV § 2(a) (fixing the legislative cap); *People ex rel. Snowball v. Pendegast*, 96 Cal. 289, 291-92 (1892). Each legislator is elected from a separate district and the district lines are redrawn once per decade. *Vandermost v. Bowen*, 53 Cal. 4th 421, 438 (2012). After California Proposition 11 was passed in 2008, the task of redistricting was transferred from the legislature to a 14-member Citizens Redistricting Commission.[2] Cal. Const. art. XXI, § 2; *Vandermost*, 53 Cal. 4th at 438. The current district map was adopted in 2011.[3] *Vandermost*, 53 Cal. 4th at 438. Citing the current population-to-legislator ratio, plaintiffs assert, "The People in California have had their representation limited and capped and now have an Oligarchy at best and only a mere shadow of connection to the represented." *Id.* ¶ 2.3. They allege that lawmakers, to cope with the population and workload increase, have hired 2,100 unelected legislative staff members to do their work for them, further impeding Californians' power of self-governance. *Id.* ¶¶ 4.22-23.

/////

---

[2] The commission consists of five Democrats, five Republicans and four commissioners from neither major party. Cal. Const. art. XXI, § 2(c)(2).

[3] The Commission's Final Report regarding the 2011 redistricting is available at http://wedrawthelines.ca.gov/downloads/meeting_handouts_082011/crc_20110815_2final_report.pdf (last visited Jan. 31, 2018).

Plaintiffs cite defendant's refusal to increase representatives as an arbitrary violation of seven federal constitutional guarantees identified as: (1) Privileges and Immunities; (2) Due Process; (3) Equal Protection; (4) Apportionment; (5) First Amendment; (6) Voting Rights Act; and (7) Ninth Amendment. *Id.* ¶¶ 5.5, 5.9, 5.12, 5.17, 5.21, 5.28, 5.37. Plaintiffs seek a declaration that the current legislative makeup is unconstitutional; an injunction establishing legislative districts "in accordance with such plans as plaintiffs will submit to the Court"; a moratorium on the hiring of legislative assistants who perform legislative functions; and a decree sanctioning the State for these constitutional violations. *Id.* at 29-30, Prayers 2-6.

### C. Procedural History

Plaintiffs filed this lawsuit in May 2017, and requested hearing by a three-judge court under 28 U.S.C. § 2284(a).[4] *Id.* at 29, Prayer 1. The court initially granted this request. Aug. 2, 2017 Min. Order, ECF No. 14. Defendant moved for reconsideration, arguing the court should first ensure it has subject-matter jurisdiction. ECF No. 15. Plaintiff then moved for an order sanctioning defendant's reconsideration request as "vexatious." Sanctions Mot., ECF No. 23.

The court ultimately agreed with the defense and elected to first adjudicate the justiciability concerns raised in defendant's motion to dismiss. Aug. 24, 2017 Min. Order, ECF No. 22 (citing *Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015)); *see also* Mot., ECF No. 9, at 13-17. Plaintiffs oppose dismissal but also move for leave to file an amended complaint to bolster the basis for subject-matter jurisdiction. Opp'n, ECF No. 16; Mot. to Amend, ECF No. 11.

## II. SUBJECT-MATTER JURISDICTION

### A. Standing

Defendant argues this court lacks subject-matter jurisdiction because plaintiffs lack standing to sue in federal court. Mot. at 14.

/////

---

[4] "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a).

Standing, a component of justiciability,[5] ensures any grievance brought to federal court properly belongs in the judicial forum. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The federal constitution's central concept of separation-of-powers defines and limits what grievances a federal court may hear. *Id.* at 559-60. The court's power to adjudicate grievances is specifically limited and defined by the constitution and by federal statutory law. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Given these limitations, a defendant may move to dismiss a case when federal subject-matter jurisdiction appears to be lacking. Fed. R. Civ. P. 12(b)(1). A party may challenge jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). Here, defendant brings a facial challenge to the complaint, arguing the allegations, even if true, cannot establish standing.

As the parties invoking the court's subject-matter jurisdiction, the plaintiffs have the burden to establish it. *Lujan*, 504 U.S. at 561. To meet this burden, plaintiffs must show they have standing to sue, which in turn requires proof they suffered an "injury in fact." *Id.* at 560. As relevant here, an injury-in-fact is one that is particularized to each plaintiff or each group of plaintiffs, *id.*; the injury cannot be a general grievance "'where [the plaintiff's] own injury is not distinct from that suffered in general by other taxpayers or citizens.'" *Hein v. Freedom from Religion Found., Inc*., 551 U.S. 587, 598 (2007) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613 (1989)).

Defendant contends plaintiffs cannot prove they have standing in federal court because they assert a generalized grievance common to all Californians. Mot. at 14. Plaintiffs rebuff this characterization, arguing each plaintiff suffered a unique and particularized injury based on the legislative inadequacies highlighted in the complaint. Opp'n at 15-16.

---

[5] "Justiciability" refers to the court's ability to hear a case. Several justiciability doctrines outline characteristics a case must have before a federal court may hear it. For instance, the plaintiff must have standing to sue, the issues must be ripe for review and devoid of political questions, and the court's opinion cannot be advisory. If a case lacks the requisite characteristics, it is deemed "nonjusticiable," meaning a federal court cannot hear it.

5

The court finds the complaint as currently pled identifies only generalized grievances. That the cap on state lawmakers has affected each named plaintiff differently does not transform plaintiffs' grievances from the general to the particular: Although each plaintiff alleges a particularized gripe, such as how the legislative cap dilutes his or her voice on a specific issue or encumbers the potential to run for office in a particular area, the threatened right to self-governance remains an injury common to all Californians. *See Warnken v. Schwarzenegger*, No. CIV S-08-2891 LKK EFB PS, 2009 WL 4809880, at *4-5 (E.D. Cal. Dec. 8, 2009) (reaching same conclusion on similar claims), *report and recommendation adopted*, 2010 WL 1407796 (E.D. Cal. Mar. 8, 2010).

The complaint's own language illustrates this point. Plaintiffs allege "California's static apportionment since 1862 coupled with an exploding population invidiously devalues and abridges the value of each person's vote[.]" Compl. ¶ 4.23. They contend "the People's right to participate in meaningful self-governance has been abandoned" and candidates no longer represent "the people." *Id.* at 1. Plaintiffs also contend lawmakers cannot "enact[] legislation which benefits the people." *Id.* ¶ 2.7. In essence, plaintiffs argue the ratio between legislators and constituents in California dilutes "every" Californian's vote, hampers "every" Californian's access to government and diminishes "every" Californian's right to self-governance. In short, plaintiffs lament the predicament facing every Californian voter.

Plaintiffs' grievances are inherently generalized, falling outside the court's Article III power. The U.S. Supreme Court has "consistently held" that

> a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Lance v. Coffman*, 549 U.S. 437, 439 (2007) (listing cases and quoting *Lujan*, 504 U.S. at 573-74); *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220-21 (1974) (Article III standing may not be predicated on an interest held by all members of the public because such interest is necessarily abstract); *Hein*, 551 U.S. at 606-08 (taxpayers lacked standing

6

to challenge President's "faith-based initiatives" where their injury was not distinct from that suffered by other taxpayers).

Plaintiffs compare their plight to that of the voters in *Baker v. Carr*, 369 U.S. 186 (1962). The comparison is misplaced. In *Baker*, voters in five legislative districts successfully challenged an apportionment statute under the equal protection clause. *Id.* at 237. There, the state had not reapportioned its legislature in sixty years and the interim population growth led to grossly malapportioned legislative districts, in that it "disfavor[ed] the voters in the [five] counties in which [the plaintiffs] reside[d], placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters in irrationally favored counties." *Id.* at 207-08. In other words, the alleged malapportionment arbitrarily diluted the plaintiffs' votes and arbitrarily strengthened voting power in other districts. *Id*. This inequality spawned a set of particularized grievances sufficient to confer standing. Unlike in *Baker*, plaintiffs here do not contend that voting strength is arbitrarily diluted in some districts vis-a-vis others; plaintiffs argue instead that each district is too large and therefore every Californian's vote and access to government is diluted. The grievance plaintiffs cite is common to all Californians.

Without an injury sufficiently particularized to their circumstances, plaintiffs have not established standing. Recognizing plaintiffs could plausibly cure this defect with an amended complaint, the court next addresses defendant's second basis for dismissal, which if valid could warrant dismissal with prejudice.

B. Political Question Doctrine

Defendant argues plaintiffs' claims are non-justiciable because they require the court to adjudicate political questions that are best suited to legislative resolution. Mot. at 16-17.

The political question doctrine examines whether the claims or requested remedies are of the kind a federal court in the third branch can remedy. If a requested remedy would require the court to encroach on the other two branches of government, adjudicating the case may violate the careful balance of powers upon which this country was founded. As Chief Justice Marshall aptly observed more than two centuries ago, "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this

7

court." *Marbury v. Madison*, 5 U.S. 137, 170 (1803). As such, "disputes involving political questions lie outside of the Article III jurisdiction of federal courts." *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) (citations omitted). The political question doctrine prevents federal courts from intruding upon policy choices and value judgments committed by the Constitution to Congress or the executive branch. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009) ("[C]ourts have no charter to review and revise legislative and executive action") (citations omitted).

In *Baker v. Carr*, *supra*, the Supreme Court outlined six independent factors or scenarios that may reflect the presence of nonjusticiable political questions. *See Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (referring to the *Baker* factors as "six independent tests"). Although these scenarios are "prominent" in cases involving nonjusticiable political questions, not every case or controversy touching upon these topics "lies beyond judicial cognizance." *Baker*, 369 U.S. at 211, 217; *see also Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 229 (1986) (emphasizing "not every matter touching on politics is a political question."). These six scenarios include (1) questions the Constitution expressly committed to another branch; e.g., whether to remove the nation from membership in an international alliance; (2) questions for which the court cannot reasonably discover the standards and criteria to answer; e.g., creating a new committee or governing body; (3) questions the court cannot resolve through judicial, as opposed to legislative, reasoning; e.g., the appropriate age to drink alcohol; (4) questions that would cause the court to disrespect another branch; e.g., whether it was constitutional to invade Iraq; (5) questions that present an unusual need "for unquestioning adherence to a political decision already made"; e.g., the president has declared a state of war; or (6) questions posing potential embarrassment should the branches of government contradict one another; e.g., whether the executive properly recognized a foreign nation. *See Baker*, 369 U.S. at 217. The first three factors are constitutional limitations; the final three are prudential considerations counseling against judicial intervention, meaning it would be impractical, unfeasible or unwise to answer the question posed, but not unconstitutional. *Corrie*, 503 F.3d at 981 (citations omitted).

/////

Here, non-justiciable political questions permeate plaintiffs' complaint. Plaintiffs ask the court to declare the current scheme of legislative districts unconstitutional; to "enjoin the growth of the Representative Districts"; and to fashion a new legislative makeup "in accordance with such plans as plaintiffs will submit to the Court[.]" Compl. at 29, Prayer 3. Plaintiffs also request a court-appointed "Special Master for determinations of population data for the Court to use" and at least one Native American majority district. *Id.* at 29-30, Prayers 3, 5.

Plaintiffs seek precisely the kind of legislative policy determination committed to "nonjudicial discretion." *See Baker*, 369 U.S. at 217; *see also E.E.O. C. v. Peabody W. Coal Co.*, 400 F.3d 774, 785 (9th Cir. 2005) (questions are non-justiciable when they require the court to make a legislative-type policy judgment, "rather than resolving the dispute through legal and factual analysis."). Plaintiffs' alleged injury, caused by vote dilution and hampered government access, is caused by the state legislature's size, *see* Cal. Const. art. IV § 2(a); a size the drafters of the state's constitution specifically proposed, debated and enacted. *Pendegast*, 96 Cal. at 291-92. Increasing the numbers of legislators would appear to be susceptible to constitutional amendment, *see* Cal. Const. art. II, § 8 (outlining initiative process for amending the state constitution), yet plaintiffs bring this grievance to federal court, effectively asking the court to usurp the electorate and unilaterally alter the state constitution. Doing so would run afoul of the Supreme Court's wisdom articulated in *Baker*: It would require the court to legislate, a task committed to the legislative branch; it would require the court to make policy determinations beyond the realm of judicial reasoning; and it would require the court to fashion a remedy without judicially discoverable and manageable standards to do so. *See Baker*, 369 U.S. at 210.

The Supreme Court has rejected similar requests for relief. For instance, in *Holder v. Hall*, 512 U.S. 874 (1994), African-American voters brought a vote dilution claim against a county in the state of Georgia with a "single-commissioner form of government[,]" objecting to the voters' inability to elect a candidate of their choice. *Id.* at 876-78. The plaintiffs requested a multimember commission such as that installed in other Georgia counties. *Id.* at 877. The Supreme Court held that federal courts cannot order a change in the size of a governing body, explaining "the search for a benchmark is quite problematic" in vote dilution cases regarding the

9

size of a government body because "[t]here is no principled reason why one size should be picked over another as the benchmark for comparison." *Id.* at 881. In *Vieth*, 541 U.S. at 277, the Court methodically detailed the complicated history of federal courts' attempting to manage redistricting litigation, and ultimately deemed a Congressional redistricting plan, similar to the one plaintiffs seek here, non-justiciable. *Id.* at 278-84 (citing *Baker*, 396 U.S. at 217). As in *Vieth* and *Holder*, plaintiffs' requested outcome here is not amenable to judicial management.

Plaintiffs have not established standing and their requested remedies turn on the resolution of non-justiciable political questions. Accordingly, the court GRANTS defendant's motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction.

III. <u>LEAVE TO AMEND</u>

Plaintiffs separately move to amend their complaint, to remedy some of the shortfalls highlighted in defendants' dismissal motion. *See* Mot. to Amend. The federal rules mandate leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation and quotation marks omitted). Before granting leave, a court considers any potential bad faith, delay, or futility regarding the proposed amendment, and the potential prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Absent prejudice, there is a strong presumption in favor of granting leave to amend. *Eminence Capital*, 316 F.3d at 1052.

Plaintiffs not only ask to amend their complaint but have filed a proposed amended complaint. *See* Ex. A, ECF No. 11-1. Doubtful that the deficiencies raised by their motion to dismiss can be cured, defendant opposes plaintiffs' request but does not identify any undue prejudice. Opp'n, ECF No. 13. Because this is plaintiffs' first complaint, and considering both the absence of any undue prejudice and the strong presumption in favor of permitting leave to amend, the court GRANTS plaintiffs' request. The court does not, however, approve plaintiffs' proposed 118-page amended complaint for filing. Rather, a properly amended complaint must remedy the specific shortfalls analyzed above and be no longer than twenty-five pages.

10

## IV. SANCTIONS

Plaintiffs have also moved for an order sanctioning defendant. Sanctions Mot. Defendants have not responded. Neither party raised the issue at hearing. H'rg Mins., ECF No. 27.

Each ground for sanctions plaintiffs identifies is now moot. First, plaintiffs cite defendant's refusal to stipulate to the proposed first amended complaint. Sanctions Mot. at 7-8. But the court has declined to approve the proposed complaint and has granted plaintiff leave to file an amended complaint. Second, plaintiffs cite as "vexatious" defendant's motion to reconsider the referral of this case to a three-judge court. *Id.* at 4. But the court has granted that reconsideration request. *See* ECF No. 22. Finally, plaintiffs cite as "bad faith" defendant's characterization of the facts and issues pertaining to the court's subject-matter jurisdiction, but in so arguing plaintiffs merely restate their arguments in favor of the exercise of jurisdiction. Sanctions Mot. at 9-14. The court has adjudicated these arguments above, in defendant's favor.

Finding no valid basis for sanctions, the court DENIES plaintiffs' motion.

## V. CONCLUSION

Plaintiffs' complaint, as currently articulated, asserts a generalized grievance that does not establish standing to sue in federal court. The complaint is also fraught with non-justiciable political questions. Accordingly, the court DISMISSES the complaint under Rule 12(b)(1) based on lack of subject-matter jurisdiction, but GRANTS plaintiffs leave to amend the complaint subject to the limitations discussed above. The amended complaint, limited to **twenty-five pages**, shall be filed within **twenty-one days**.

Because a single-judge court lacks the authority to dismiss this case on the merits under Rule 12(b)(6), *Shapiro*, 136 S. Ct. at 455-56, the court DENIES without prejudice defendant's motion to dismiss under Rule 12(b)(6), subject to renewal should this case proceed before a three-judge court at some point in the future. The court DENIES as MOOT plaintiffs' motion for sanctions.

/////

/////

11

1 IT IS SO ORDERED.

2 This resolves ECF Nos. 9, 11, 23.

3 DATED: January 31, 2018.

_____
UNITED STATES DISTRICT JUDGE