1   XAVIER BECERRA, State Bar No. 118517
    Attorney General of California
2   MARK R. BECKINGTON, State Bar No. 126009
    Supervising Deputy Attorney General
3   GEORGE WATERS, State Bar No. 88295
    Deputy Attorney General
4     1300 I Street, Suite 125
      P.O. Box 944255
5     Sacramento, CA 94244-2550
      Telephone:  (916) 210-6059
6     Fax:  (916) 324-8835
      E-mail:  George.Waters@doj.ca.gov
7   *Attorneys for Defendant Alex Padilla*

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12

13  | | |
    |---|---|
    | **CITIZENS FOR FAIR REPRESENTATION; CITY OF FORT JONES; THE CALIFORNIA LIBERTARIAN PARTY; THE CALIFORNIA AMERICAN INDEPENDENT PARTY; THE MARIN COUNTY GREEN PARTY; MARK BAIRD; JOHN D'AGOSTINI; LARRY WAHL; SHASTA NATION INDIAN TRIBE; ROY HALL JR; WIN CARPENTER; KYLE CARPENTER; PATTY SMITH; KATHERINE RADINOVICH; DAVID GARCIA; LESLIE LIM; KEVIN MCGARY; TERRY RAPOZA; HOWARD THOMAS; MICHAEL THOMAS; STEVEN BAIRD; MANUEL MARTIN; OTHERS SIMILARLY SITUATED; AND DOES 1-30,** | 2:17-cv-00973 <br><br> **DEFENDANT ALEX PADILLA'S NOTICE OF MOTION & MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [FRCP 12(b)(1)]** <br><br> Date:         June 15, 2018 <br> Time:         10:00 a.m. <br> Dept:         3 <br> Judge:        The Honorable Kimberly J. Mueller <br><br> Trial Date:   N/A <br> Action Filed:  5/9/17 |
    |                        Plaintiffs, <br><br>     v. <br><br> **SECRETARY OF STATE ALEX PADILLA,** <br><br>              Defendant. | |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................................ 1

COUNSEL CERTIFICATION RE MEET AND CONFER ......................................... 1

INTRODUCTION ..................................................................................................... 2

BACKGROUND ....................................................................................................... 2

    I.    Plaintiffs' Allegations ................................................................... 2

    II.    California Law Governing Redistricting and the Size of Legislative Districts ....................................................................................... 5

    III.    Prior Litigation in this District Posing the Same Issue ........................... 6

    IV.    Prior Proceedings in the Present Action ................................................. 6

LEGAL STANDARD ............................................................................................... 6

ARGUMENT ........................................................................................................... 7

    I.    The Court Does Not Have Subject Matter Jurisdiction of Plaintiffs' Claims ......... 7

        A.    Plaintiffs Lack Article III Standing Because the Injury They Allege Is a General Grievance Shared by the Public at Large. ............ 7

        B.    Plaintiffs' Claims Are Barred by the Political Question Doctrine. ............. 9

CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

CASES

*Baker v. Carr*
   369 U.S. 186, 211 (1962) ........................................................................9, 10, 11, 12

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010) .................................................................................6

*Corrie v. Caterpillar*
   503 F.3d 974 (9th Cir. 2007) ...................................................................................9

*Drake v. Obama*
   664 F.3d 774 (9th Cir. 2011) ...........................................................................7, 9

*Ex Parte Levitt*
   302 U.S. 633 (1937) ..................................................................................................8

*Hein v. Freedom From Religion Foundation, Inc.*
   551 U.S. 587 (2007) ..................................................................................................8

*Holder v. Hall*
   512 U.S. 874 (1994) ................................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of America*
   511 U.S. 375 (1994) ..................................................................................................6

*Lance v. Coffman*
   549 U.S. 437 (2007) ..................................................................................................8

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992) ..................................................................................................7

*Marbury v. Madison*
   5 U.S. (1 Cranch) 137 (1803) ..................................................................................9

*No GWEN Alliance of Lane County, Inc. v. Aldridge*
   855 F.2d 1380 (9th Cir. 1988) .................................................................................9

*People ex rel. Snowball v. Pendegast*
   96 Cal. 289 (1892) (1879 Constitution fixed membership of Senate at 40 and
   Assembly at 80) ........................................................................................................5

*Reynolds v. Sims*
   377 U.S. 533, 577 (1964) .......................................................................................11

### TABLE OF AUTHORITIES
#### (continued)

Page

*Schlesinger v. Reservists Comm. To Stop the War*
    418 U.S. 208, 217 (1974 ........................................................................7, 8

*Summers v. Earth Island Institute*
    555 U.S. 488 (2009) ...................................................................................6

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*
    454 U.S. 464 (1982) ...................................................................................7

*Vandermost v. Bowen*
    53 Cal.4th 421 (2012) ...............................................................................5

*Vieth v. Jubelirer*
    541 U.S. 267 (2004) ..........................................................................10, 12

*Warnken v. Schwarzenegger*
    2009 WL 4809880 (E.D. Cal., 2009) ......................................................6

*Warren v. Fox Family Worldwide, Inc.*
    328 F.3d 1136 (9th Cir. 2003) ................................................................7

*Warth v. Seldin*
    422 U.S. 490 (1975) ...................................................................................8

STATUTES

Voting Rights Act
    § 2 .............................................................................................................11

CONSTITUTIONAL PROVISIONS

California Constitution
    Article II, § 8 ..........................................................................................11
    Article II, § 8(a) .....................................................................................10
    Article IV, § 2 .........................................................................................10
    Article IV, § 2(a) ......................................................................................5
    Article IV, § 6 ...........................................................................................5
    Article XXI, § 1 .........................................................................................5

COURT RULES

Federal Rules of Civil Procedure Rule
    12(b)(1) ...........................................................................................1, 2, 6

Defendant Alex Padilla's Notice of Motion & Motion to Dismiss Second Amended Complaint (2:17-cv-00973)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 15, 2018, at 10:00 a.m. in Courtroom 3, 15th Floor, of the United States Courthouse located at 501 I Street, Sacramento, CA, 95814, Defendant Alex Padilla will move to dismiss plaintiffs' second amended complaint with prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, all records in this action and matters of which the Court may take judicial notice, and any argument to be heard by the Court.

**COUNSEL CERTIFICATION RE MEET AND CONFER**

The undersigned counsel certifies that he conferred with plaintiffs' counsel Scott Stafne on April 12, 2018.  During those conferences, the grounds for this motion to dismiss, and related procedural issues, were explained and discussed.  Meet and confer efforts now have been exhausted.

Dated:  April 16, 2018                              Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*/s/ George Waters*

GEORGE WATERS
Deputy Attorney General
*Attorneys for Defendant Alex Padilla*

1

**INTRODUCTION**

Plaintiffs' first complaint alleged that the present size of the California Legislature is too small—and the resulting legislative districts too large—to represent California's almost 40 million residents.  That complaint was dismissed because it did not establish standing and because it posed non-justiciable political questions.  Plaintiffs now have drafted a second amended complaint (SAC) that alleges that the California Legislature is too small—and the resulting legislative districts too large—to provide adequate representation to California's racial, ethnic, political, and rural minority groups, and to "Californians who are not wealthy and lack effective access to the political elites that dominate the legislature."

This is a distinction without a difference.  Plaintiffs still assert a claim common to all Californians, and they still pose a non-justiciable political question concerning the proper size of the California Legislature.  The SAC should be dismissed with prejudice.

**BACKGROUND**

**I.   PLAINTIFFS' ALLEGATIONS**

Plaintiffs' Second Amended Complaint (SAC) alleges that more than 150 years ago California fixed the size of its Legislature at 40 Senators and 80 Assemblymembers, and did so to discriminate against non-whites.  SAC (Dkt. 39) at p. 2.  Plaintiffs further allege that the "[b]y maintaining these arbitrary caps, California has perpetuated a system of oligarchic governance" that ignores their interests.  (*Id.*)

Plaintiffs are:[1]

- Citizens for Fair Representation (CFR), a nonprofit that educates Californians regarding their right to participate in government.  CFR is comprised of Californians of various races, ethnicities, religions, and beliefs.  CFR members have effectively

---

[1]  Several individuals and entities described as plaintiffs in the original complaint—the City of Fort Jones, Siskiyou County, Terry Rapoza, Howard Thomas, Patty Smith, Katherine Radanovich, Kevin McGary, the Shasta Tribe of Indians, Steve Baird, and Manuel Martin—are not listed as plaintiffs in the SAC.  *See* Dkt. 1 (Complaint) ¶¶ 3.4, 3.5, 3.13, 3.14, 3.15, 3.18, 3.20, 3.21.  Apparently they no longer are plaintiffs.

2

been disenfranchised because their legislative districts are so large that their interests are routinely ignored by the Legislature.  SAC ¶ 1.0.

- Win Carpenter, Kyle Carpenter, and Roy Hall Jr., are Native Americans who reside in Senate District 1.  California's large legislative districts, growing larger over time, deny them an opportunity to elect a member of their race to a statewide body.  SAC ¶ 1.2.

- David Garcia is a Hispanic U.S. citizen who resides in Senate District 8.  The cap on the size of the Legislature is part of a constitutional/statutory framework that denies Hispanics the ability to elect candidates of their choice to the Legislature.  SAC ¶ 1.3.

- Raymond Wong and Leslie Lim are U.S. citizens of Asian descent who reside in Senate Districts 32 and 21 respectively.  The cap on the size of the Legislature is part of a constitutional/statutory framework that dilutes their vote and the votes of other Asians.  SAC ¶ 1.4.

- Cindy Brown is a black U.S. citizen who resides in Senate District 37.  The cap on the size of the Legislature dilutes black political power.  SAC ¶ 1.5.

- Mark Baird, the Carpenters, John D'Agostini, Mike Poindexter, Michael Thomas, and Larry Wall reside in senate districts composed of eight or more counties.  The cap on the size of the Legislature dilutes their political power.  They were injured by the Legislature's failure to timely address erosion of the spillway at Oroville Dam.  SAC ¶¶ 1.6, 3.33.

- The cities of Colusa and Williams are rural municipalities in Senate District 4, which is composed of eight counties.  SAC ¶ 1.6.

- The California American Independent Party and the California Libertarian Party are political parties that have substantial numbers of members in California.  The cap on the number of legislators seriously undermines their ability to elect candidates of their choice.  SAC ¶ 1.7.

3

1   Defendants are California Secretary of State Alex Padilla, the California Citizens

2   Redistricting Commission, and the State of California.[2]  SAC ¶¶ 1.9 – 1.11.

3   Plaintiffs allege that the membership of the state Legislature was fixed at 40 Senators and

4   80 Assemblymembers by statute in 1862 and by the Constitution in 1879 (SAC ¶ 3.0); that the

5   predominant purpose for limiting the membership was "to promote the white man's interests by

6   the exclusion of non-white people from participating in California's political process" (SAC

7   ¶ 3.14); that California has a long history of discriminating against minority groups (SAC ¶¶ 3.0 –

8   3.35); that presently each Assembly district contains almost 500,000 people and each Senate

9   district contains almost one million people (SAC ¶ 3.1); that the adverse effects of large

10  legislative districts are felt by all voters, particularly members of racial, ethnic, political, and rural

11  minority groups (SAC ¶ 3.27); and that the cap on the number of legislative districts has created

12  creates an unresponsive legislative oligarchy (SAC ¶ 3.35).

13  The complaint makes six claims:

14  1.   ALL PLAINTIFFS—Equal Protection, Race Discrimination:  The cap on the legislature's

15  size was designed to discriminate against non-whites and dilute their votes.  The resulting

16  discrimination will worsen as the State grows. (SAC ¶¶ 4.0 – 4.3);

17  2.   NON-WHITE PLAINTIFFS—Equal Protection, Race Discrimination:  White legislators

18  know that smaller districts will diminish their electoral prospects.  A motivating factor to

19  maintain large districts has been to maintain the domination of a small cadre of political

20  elites.  The resulting discrimination will worsen as the population grows.  SAC ¶¶ 5.0 – 5.4.

21  3.   ALL PLAINTIFFS—Equal Protection, Lack of Political Power:  Legislative districts are so

22  large that voters have no meaningful influence over the Legislature.  A Californian has less

23  political power than citizens of other States.  The resulting discrimination will worsen as

24  the population grows.  SAC ¶¶ 6.0 – 6.4.

25  4.   ALL PLAINTIFFS—Due Process, Lack of Adequate Representation:  California's

26  legislative districts are so large that millions of state residents have no meaningful access to

27

28  _____
    [2]  As of the writing of this brief, neither the Commission nor the State has been served.

their representatives. A significant percentage of voters have greater difficulty obtaining benefits and services than do voters with wealth and social status. SAC ¶¶ 7.0 – 7.2.

5. ALL PLAINTIFFS—First Amendment: The limit on the number of legislators was enacted and is maintained to suppress and retaliate against residents who advocate viewpoints contrary to the political elites. Plaintiff Baird lost his job as a deputy sheriff in part because of his participation in this lawsuit. SAC ¶¶ 8.0 – 8.2.

6. ALL PLAINTIFFS—Guarantee Clause: The Guarantee Cause guarantees a republican form of government. At the time it was written, the Guarantee Clause was commonly understood to require small legislative districts that the people could monitor and control. California does not have a republican form of government because its large districts assure that the great majority of residents have no effective influence on their legislators. SAC ¶¶ 9.0 – 9.9.

As relief, plaintiffs seek a declaration that the size of the Legislature is unconstitutional, and an injunction requiring the number of legislators to be increased to a number that will insure that voters who have been discriminated against on the basis of race, and voters in rural areas, have a meaningful opportunity to elect their preferred candidates. SAC ¶¶ 10.0 – 10.3.

## II. CALIFORNIA LAW GOVERNING REDISTRICTING AND THE SIZE OF LEGISLATIVE DISTRICTS

The membership of the Legislature is fixed by the California Constitution at 40 Senators and 80 Assemblymembers. Cal. Const. art. IV, § 2(a). The membership has been fixed at these numbers since at least 1879. *People ex rel. Snowball v. Pendegast*, 96 Cal. 289, 291-92 [31 P. 103, 104] (1892) (1879 Constitution fixed membership of Senate at 40 and Assembly at 80). Each legislator is elected from a separate district. Cal. Const. art. IV, § 6.

Redistricting of congressional, State Senatorial, Assembly, and Board of Equalization districts is done by the Citizens Redistricting Commission. Cal. Const. art. XXI, § 1. Redistricting occurs in the year following the year in which the national census is taken, at the beginning of each decade. *Id*. The Commission adopted the current statewide maps in 2011. *Vandermost v. Bowen*, 53 Cal.4th 421, 438 (2012). The Commission adopted an "ideal standard"

5

1   population of 702,905 for congressional districts, 465,674 for Assembly districts, 931,349 for

2   Senate districts, and 9,313,489 for Board of Equalization districts.  Citizens Redistricting

3   Commission Final Report on 2011 Redistricting, August 15, 2011, at 9, 11.[3]

4   **III.   PRIOR LITIGATION IN THIS DISTRICT POSING THE SAME ISSUE**

5          In 2009 a separate department of this Court decided a virtually identical case.  *Warnken v.*

6   *Schwarzenegger*, 2009 WL 4809880 (E.D. Cal., 2009), *report and recommendation adopted* 2010

7   WL 1407796 (E.D. Cal., 2010).  In *Warnken*, a Santa Barbara resident alleged that California

8   Assembly districts were so large that state government was inaccessible to most citizens, and

9   running for office was so expensive that it was out of reach for most citizens.  *Id*., 2009 WL

10  4809880 at *1.  The case was dismissed for lack of subject matter jurisdiction.  *Id*., 2009 WL

11  4809880 at *8.

12  **IV.   PRIOR PROCEEDINGS IN THE PRESENT ACTION**

13         Plaintiffs' original complaint was dismissed for want of subject-matter jurisdiction.  The

14  Court found that plaintiffs' lacked standing to bring their claims and that their requested remedies

15  turned on the resolution of non-justiciable political questions.  The Court granted plaintiffs leave

16  to file an amended complaint limited to 25 pages.  Dkt. 32 at p. 11.

17                                            **LEGAL STANDARD**

18         A challenge to standing is properly raised in a Rule 12(b)(1) motion to dismiss for lack of

19  subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th

20  Cir. 2010).  Federal courts are courts of limited jurisdiction.  Thus it is presumed that a cause lies

21  outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party

22  asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

23  The plaintiff bears the burden of showing that each claim comes within the jurisdiction of a

24  federal court.  *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

25

26

27         [3]   Available at

28  http://wedrawthelines.ca.gov/downloads/meeting_handouts_082011/crc_20110815_2final_report.
    pdf (last visited 4/14/18).

**ARGUMENT**

**I.    THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OF PLAINTIFFS' CLAIMS.**

**A.    Plaintiffs Lack Article III Standing Because the Injury They Allege Is a General Grievance Shared by the Public at Large.**

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).  Standing is not measured by the "intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 486 (1982).  To establish standing, a plaintiff must show:

> (1) an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court; and
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Drake v. Obama*, 664 F.3d 774, 779 (9th Cir. 2011), quoting *Lujan,* 504 U.S. at 560–61 (omissions in original) (internal quotation marks and citations omitted).

Plaintiffs do not meet the first prong of standing analysis because the injury they allege— diluted representation in the Legislature—is a general grievance shared by the public at large.[4] "[A] litigant's interest cannot be based on the 'generalized interest of all citizens in constitutional governance.'"  *Drake*, 664 F.3d at 774 (quoting *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 217 (1974)).  "[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at

---

[4] *See* Complaint ¶2.3: "*The People in California* have had their representation limited and capped and now have an Oligarchy at best and only a mere shadow of connection to the represented."  (Emphasis added).

Defendant Alex Padilla's Notice of Motion & Motion to Dismiss Second Amended Complaint (2:17-cv-00973)

573-74.  "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In case after case, the Supreme Court has held that a general grievance widely shared by the public does not create Article III standing.  For example, in *Lance v. Coffman*, 549 U.S. 437 (2007), the plaintiffs challenged a redistricting provision of the Colorado Constitution that limited redistricting to once per census.  The Court held that the plaintiffs lacked standing to pursue the claim:

> The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed.  This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past.  It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing.  Because plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim.

*Lance*, 549 U.S. at 442.  *See also Ex Parte Levitt,* 302 U.S. 633, 636 (1937) (challenge to Hugo Black's appointment to the Supreme Court dismissed where plaintiff alleged only "a general interest common to all members of the public"); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220-221 (1974) (Article III standing may not be predicated on an interest held by all members of the public because such interest is necessarily abstract); *Hein v. Freedom From Religion Foundation, Inc.* 551 U.S. 587, 598 (2007) (taxpayers lacked standing to challenge President's "faith-based initiatives" where their injury was not distinct from that suffered by other taxpayers).

The original complaint was dismissed in part because the Court found that it alleged only a generalized grievance.  Dkt. 32 at 6.  As the Court noted:

> That the cap on state lawmakers has affected each named plaintiff differently does not transform plaintiffs' grievances from the general to the particular: *Although each plaintiff alleges a particularized gripe*, such as how the legislative cap dilutes his or her voice on a specific issue or encumbers the potential to run for office in a particular area, *the threatened right to self-governance remains an injury common to all Californians*.

*Ibid.* (emphasis added).

1      The same is true of the SAC.  Plaintiffs concede that their underlying claim is that the size

2  of legislative districts harms all Californians.  See, e.g., SAC ¶ 3.27 ("the adverse effects of

3  representative government by enormous legislative districts are felt by all California voters");

4  SAC p. 2 ("California has perpetuated a system of oligarchic governance at odds with the norm of

5  self-representation at the heart of the U.S. Constitution").  Although some allegations are specific

6  to minorities, the term "minority" is broadly defined to include at the least "race, ethnicity,

7  political affiliation, or residence in more sparsely populated areas of the state" and "Californians

8  who are not wealthy and lack effective access to the political elites that dominate the legislature."

9  SAC ¶¶ 3.27, 6.2.  Plaintiffs again assert a harm to a right to self-governance shared by all

10  Californians.

11      Plaintiffs lack standing to pursue their claims in federal court because their asserted

12  injury—diluted representation in the state Legislature—is a general grievance shared by the

13  public at large.  *Drake*, 664 F.3d at 774.

14      **B.**    **Plaintiffs' Claims Are Barred by the Political Question Doctrine.**

15      The political question doctrine originated in Chief Justice Marshall's observation that

16  "[q]uestions, in their nature political, or which are, by the constitution and laws, submitted to the

17  executive, can never be made in this court."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170

18  (1803).  "The Supreme Court has since explained that '[t]he nonjusticiability of a political

19  question is primarily a function of the separation of powers.'"  *Corrie v. Caterpillar*, 503 F.3d

20  974, 980 (9th Cir. 2007) (quoting *Baker v. Carr*, 369 U.S. 186, 211 (1962)).  The presence of a

21  political question deprives the court of subject matter jurisdiction.  *See id*. at 980-82; *see also No*

22  *GWEN Alliance of Lane County, Inc. v. Aldridge*, 855 F.2d 1380, 1382 (9th Cir. 1988) ("[T]he

23  presence of a political question precludes a federal court, under Article III of the Constitution,

24  from hearing or deciding the case presented.").

25      In *Baker*, the Court set out a list of six independent tests that identify whether a political

26  question is raised in a particular case:

27        It is apparent that several formulations which vary slightly according to the settings in
        which the questions arise may describe a political question, although each has one or

28      more elements which identify it as essentially a function of the separation of powers.

9

1

2

3

4

5

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

6

*Baker*, 369 U.S. at 217.

7

8

   The second *Baker* test—the lack of judicially discoverable and manageable standards—

9

compels dismissal of plaintiffs' claims.  In *Vieth v. Jubelirer*, 541 U.S. 267 (2004), the Supreme

10

Court affirmed the dismissal of a political gerrymander claim, holding that claims alleging

11

political gerrymandering are nonjusticiable where there is no judicially discernable and

manageable standard for adjudicating them.  *Vieth*, 541 U.S. at 290, 305-306 (plurality opinion).[5]

12

The Court stated:

13

14

> Sometimes, however, the law is that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights.

15

*     *     *     *     *

16

17

18

> One of the most obvious limitations imposed by that requirement is that judicial action must be governed by *standard,* by *rule.*  Laws promulgated by the Legislative Branch can be inconsistent, illogical, and ad hoc; law pronounced by the courts must be principled, rational, and based upon reasoned distinctions.

19

*Id.* at 277-278 (emphasis in original).

20

   The size of the Legislature is fixed by the California Constitution.  Cal. Const. art. IV, § 2.

21

Plaintiff alleges that the number of legislators remained at 40 Senators and 80 Assemblymembers

22

since 1862.  Complaint ¶¶ 4.16-4.21.  To increase this number would require a constitutional

23

amendment.[6]  Even if this number could be increased by court order, there is no "judicially

24

25

   [5] A fifth justice, Justice Kennedy, joined in the result and wrote a concurring opinion which agreed that there is no effective standard for measuring political gerrymander claims.  *Id*. at 317.

26

27

   [6] The California Constitution may be amended by initiative.  Cal. Const. art. II, § 8(a) ("The initiative is the power of the electors to propose statutes and amendments to the Constitution and to adopt or reject them").

28

10

1  discoverable and manageable standard" to determine what the size of the Legislature should be.

2  *See Baker*, 369 U.S. at 217 [factor 2]; *Holder v. Hall*, 512 U.S. 874, 881, 885 (1994) (size of

3  districts cannot be challenged under Section 2 of the Voting Rights Act because the wide range of

4  possibilities makes the choice "inherently standardless").  Further, it would be impossible to

5  decide the correct size "without an initial policy determination of a kind clearly for nonjudicial

6  discretion."  *See Baker*, 369 U.S. at 217 [factor 3].

7      The original complaint was dismissed in part because the remedy sought by plaintiffs

8  required resolution of non-justiciable political questions:

9      Increasing the numbers of legislators would appear to be susceptible to constitutional
       amendment, *see* Cal. Const. art. II, § 8 (outlining initiative process for amending the
10     state constitution), yet plaintiffs bring this grievance to federal court, effectively
       asking the court to usurp the electorate and unilaterally alter the state constitution.
11     Doing so would run afoul of the Supreme Court's wisdom articulated in *Baker*:  *It
       would require the court to legislate, a task committed to the legislative branch; it
12     would require the court to make policy determinations beyond the realm of judicial
       reasoning; and it would require the court to fashion a remedy without judicially
13     discoverable and manageable standards to do so.  See Baker*, 369 U.S. at 210.

14  Dkt. 32 at 9 (emphasis added).

15      The same is true of the SAC.  The SAC asks the Court to declare that the Constitutional

16  limit on the size of the Legislature is unconstitutional, and enter an injunction requiring that the

17  Legislature to be expanded to a constitutional size.  SAC ¶¶ 10.0, 10.1, 10.2.  As plaintiffs

18  acknowledge, whatever size districts the court were to choose for plaintiffs would have to be used

19  for all districts because the Equal Protection Clause requires that all districts be "as nearly of

20  equal population as is practicable."  SAC ¶ 3.26, quoting *Reynolds v. Sims*, 377 U.S. 533, 577

21  (1964).  Thus plaintiffs ask the Court to perform the legislative task of determining the size of all

22  _____

23      In 2017 and 2018, a proposed initiative was circulated that would have increased the
    membership of the Legislature.  It did not qualify for the ballot.  See the California Attorney
24  General's webpage entitled "Initiatives—Inactive Measures," Proposal #17-0002, available at
    https://oag.ca.gov/initiatives/inactive-
25  measures?field_initiative_date_value%5Bvalue%5D%5Byear%5D=2017&=Apply (last visited
    4/14/18).

26      A separate proposal to divide California into three smaller states is currently in
    circulation.  See the Secretary of State's webpage entitled "Circulating Initiatives with 25% of
27  Signatures Reached," Proposal #1814, available at http://www.sos.ca.gov/elections/ballot-
    measures/initiative-and-referendum-status/circulating-initiatives-25percent-signatures/ (last
28  visited 4/14/18.  Plaintiffs suggest this as an alternate remedy to their claims.  SAC p. 1.

1   California's legislative districts; to make policy choices as to the size of those districts; and to

2   fashion a judicial remedy without manageable standards to do so.

3       This Court should not attempt to resolve this plainly political question.  As the Supreme

4   Court stated in *Vieth*, "[s]ometimes, . . . the law is that the judicial department has no business

5   entertaining the claim of unlawfulness—because the question is entrusted to one of the political

6   branches or involves no judicially enforceable rights."  *Vieth*, 541 U.S. at 277; *see also Baker*,

7   *supra*, 369 U.S. at 210 ("the lack of satisfactory criteria for a judicial determination" is a

8   dominant consideration for application of the political question doctrine).

9                                        **CONCLUSION**

10      For the reasons set forth above, plaintiffs' second amended complaint should be dismissed

11  without leave to amend.

12

13  Dated:  April 16, 2018                              Respectfully Submitted,

14                                                      XAVIER BECERRA
                                                        Attorney General of California
15                                                      MARK R. BECKINGTON
                                                        Supervising Deputy Attorney General

16

17

18                                                      */s/ George Waters*

19                                                      GEORGE WATERS
                                                        Deputy Attorney General
20                                                      *Attorneys for Attorneys for Defendant Alex*
                                                        *Padilla*

21  SA2017107016
    13050588.docx
22

23

24

25

26

27

28

                                              12

# CERTIFICATE OF SERVICE

Case Name:   **Citizens for Fair Representation,**          No.   **2:17-cv-00973**
             **et al. v. Secretary of State Alex**
             **Padilla**

I hereby certify that on <u>April 16, 2018</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ALEX PADILLA'S NOTICE OF MOTION & MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES [FRCP 12(b)(1)]**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>April 16, 2018</u>, at Sacramento, California.

|  |  |
|---|---|
| Tursun Bier | */s/ Tursun Bier* |
| Declarant | Signature |

SA2017107016
13050128.doc